2010 WY 27

**Johnn Thomas WOYAK, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. S–09–0055.

Supreme Court of Wyoming.

March 16, 2010.

Representing Appellant: Diane Lozano, State Public Defender; Tina Kerin, Appellate Counsel; and David E. Westling, Senior Assistant Appellate Counsel. Argument by Mr. Westling.

Representing Appellee: Bruce E. Salzburg, Wyoming Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Leda M. Pojman, Senior Assistant Attorney General. Argument by Ms. Pojman.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

HILL, Justice.

[¶ 1] Appellant, John Thomas Woyak (Woyak), was convicted of three counts of sexual assault in the second degree in violation of Wyo. Stat. Ann. § 6–2–303(a)(v) (LexisNexis 2005)[1] and two counts of sexual exploitation of children in violation of Wyo.

---

1. § 6–2–303. Sexual assault in the second degree.

(a) Any actor who inflicts sexual intrusion on a victim commits sexual assault in the second degree, if under circumstances not constituting sexual assault in the first degree:

. . . .

(v) At the time of the commission of the act the victim is less than twelve (12) years of age and the actor is at least four (4) years older than the victim[.]

(This statute has since been significantly amended.)

Stat. Ann § 6–4–303(b)(ii) (LexisNexis 2009).[2] Woyak contends that the district court violated his substantive constitutional rights to due process and to the protections of the confrontation clause by excluding him from a competency/taint hearing held to determine the competency of the minor victim who was to be a witness against Woyak. With respect to that same minor victim, Woyak contends that the district court erred by failing to conduct an independent competency hearing and in failing to make a finding as to whether or not that child possessed a memory sufficient to retain an independent recollection of the events which constituted the crimes against him. In addition, Woyak contends that the trial court erred by submitting a verdict form to the jury, over his objection, that was not specific as to the nature of the charges in counts IV and V. We will reverse and remand for further proceedings consistent with this opinion.

## ISSUES

[¶ 2] Woyak raises these issues:

I. Did the district court violate Woyak's constitutional rights to due process and confrontation by excluding him from a competency hearing in violation of Wyo. Stat. Ann. § 7–11–202 and W.R.Cr.P. 43?

II. Did the district court abuse its discretion by failing to conduct an independent competency hearing of a minor child and failing to make a finding supported by competent evidence that the child possessed a memory sufficient to retain an independent recollection of the occurrence as required by Wyoming law?

III. Did the trial court err by submitting a verdict form that was unspecific as to the nature of the charges in Counts [IV] and [V] over the objection of Woyak?

The State rephrases the issues thus:

I. Did Woyak have a constitutional right to be present at the competency/taint hear-

ing that was violated by his absence, and was any error in that regard harmless?

II. Was the district court's determination that the younger [victim] was competent to testify clearly erroneous or an abuse of its sound discretion?

III. Was Woyak prejudiced by any error in the verdict form?

## FACTS AND PROCEEDINGS

[¶ 3] The victims in this case are two brothers whose approximate ages were 5 and 6 years at the time the crimes were committed (albeit they were both nearing their next birthdays, i.e., ages 6 and 7). Woyak was approximately 20 years old at the time of the crimes. We will refer to the younger brother as Victim 1 and the older brother as Victim 2. Woyak was an uncle of the two victims. During the months of November and December of 2006, the victims lived in a home with their infant sister, their mother, occasional boyfriends of mother, mother's sister (who was married to Woyak), and Woyak's and his wife's two children. Other relatives were also frequent visitors at the victims' home. Woyak only lived in that house for that discrete two-month period of time and that was the only time he had access to the victims. During that two-month time period, Woyak frequently looked after the victims, as well as his own children, while the other adults went out to the bars and partied. When all residents of the house were at home, the adults frequently congregated in the basement of the home and drank alcoholic beverages and smoked marijuana. Woyak often went upstairs to "check" on the children, during which times he was alone with them. Both victims suffered from behavioral and attention deficit problems and were treated by local service providers.

2. **§ 6–4–303. Sexual exploitation of children; penalties; definitions.**

. . . .

(b) A person is guilty of sexual exploitation of a child if, for any purpose, he knowingly:

. . . .

(ii) Causes, induces, entices or coerces a child to engage in, or be used for, any explicit sexual conduct.

§ 6–4–303(a)(iii) (LexisNexis 2009) defines explicit sexual conduct thus:

"Explicit sexual conduct" means actual or simulated sexual intercourse, including genital-genital, oral-genital, anal-genital or oral-anal, between persons of the same or opposite sex, bestiality, masturbation, sadistic or masochistic abuse or lascivious exhibition of the genitals or pubic area of any person[.]

Eventually, Victim 2's problems became more severe and he was sent to another location outside Wyoming for in-patient treatment.

[¶ 4]   Although all the children had some "acting out" problems at various times, the conduct which eventuated in the criminal charges that are the subject of this case first began to come to light in January of 2007, when mother walked in on her two sons as they were engaged in performing fellatio on each other.   Mother did not "report" this event, but sent Victim 2 for counseling.   During the summer of 2007, the victims' infant sister engaged in odd behavior in front of her mother and one of mother's boyfriends (to whom the infant daughter and the victims referred to as "daddy").   When asked what her odd behavior was all about, the infant sister said she was "having sex."   As a result of this incident, the victims' mother, and the individual identified by the victims as "daddy," questioned the children about what had been going on in the household.   During this inquiry, Victim 1 related that Woyak had engaged both he and his brother in several incidents of sexual misconduct during the months of November and/or December of 2006.   This information was revealed to law enforcement, as well as treatment personnel, and an investigation was conducted which eventuated in the instant criminal prosecution.   It suffices to note here that the acts Woyak was alleged to have committed were despicable and perverted, and the issues do not require us to be more specific than that.   Unfortunately, errors that were committed by the prosecution and the district court, before the evidentiary portion of the trial began, mandate that we reverse Woyak's convictions.

## DISCUSSION

### Woyak's Right to Be Present at the Taint/Competency Hearing

[¶ 5]   The first issue arises because, on July 15, 2008, Woyak filed a motion for a competency hearing for "any and all" child witnesses who were to testify at trial.   On that same date, Woyak filed a motion for a pretrial taint hearing, asserting that the victims' testimony had been tainted by suggestive questioning by the victims' mother, aunt, and possibly others.

[¶ 6]   The trial in this case commenced on October 14, 2008.   At that time, it was known to all involved in this process that the principal witness for the State was to be Victim 1.   Victim 2 was unable to testify because of his mental/emotional condition.   Woyak's pending motions for a taint hearing and a competency hearing with respect to Victim 1 had not yet been addressed prior to the commencement of the trial.   After the jury was selected, but before any witnesses had been called to testify, the district court held the taint/competency hearing.   The jury was scheduled to return at 2:30 p.m. on that date so that the trial could get underway.   The taint/competency matters were set to begin at 1:45 p.m. on that date.   The prosecutor asked that the taint/competency hearing be conducted with Woyak not being allowed to be present.   The State asserted that Woyak did not have a right to be present and that his presence would create difficulties with respect to Victim 1 testifying.   Woyak strenuously objected.   The district court noted that Victim 1 was now 7 years of age and further commented:

THE COURT: These events are alleged to have occurred almost two years ago when he was age five.   My reaction is that it's kind of ironic that one of these hearings is categorized as a taint hearing.

I am personally worried that if the defendant was present that there is a risk that his mere presence, even though he may not indicate it by any means a desire that this young boy not testify, I'm worried his presence in this relatively small confined area of my office would result in an environment which is inappropriate.

I don't believe that this involves confrontation; in other words, this is not a situation where the state hopes to elicit information which is intended by anybody to result in support for accusations made against the defendant.   More importantly, in my mind, the jury is not here.   They don't even know that this proceeding is going on.

So because of those conclusions, I don't believe that this is a hearing at which the defendant has the absolute right to be present.

[¶ 7] Although no authority for keeping Woyak out of the hearing was discussed at the hearing, it is apparent that the prosecutor's request, and the district court's very general statement of the basis upon which the prosecutor's request was granted, appears to find its justification in the U.S. Supreme Court case *Kentucky v. Stincer*, 482 U.S. 730, 107 S.Ct. 2658, 96 L.Ed.2d 631 (1987). *Of significance, for the circumstances presented in this case, the U.S. Supreme Court noted:*

> We conclude that respondent's due process rights were not violated by his exclusion from the competency hearing in this case. We emphasize, again, the particular nature of the competency hearing. No question regarding the substantive testimony that the two girls would have given during trial was asked at that hearing. All the questions, instead, were directed solely to each child's ability to recollect and narrate facts, to her ability to distinguish between truth and falsehood, and to her sense of moral obligation to tell the truth. Thus, although a competency hearing in which a witness is asked to discuss upcoming substantive testimony might bear a substantial relationship to a defendant's opportunity better to defend himself at trial, that kind of inquiry is not before us in this case. [Emphasis added.]

*Id.*, 107 S.Ct at 2667–68.

[¶ 8] A brief, albeit incomplete, analysis of that Supreme Court decision in a secondary authority contains this discussion:

> In *Stincer*, the defendant (but not his counsel) was excluded from an in-chambers hearing at which the trial court made a preliminary determination as to whether two children who were victims of the charged sex offense had sufficient understanding of their obligation to tell the truth and sufficient intellectual capacity to be competent to testify. The Supreme Court initially noted that even though a particular hearing might be characterized as a "pre-trial proceeding," it could still be a "stage of the trial" for confrontation clause purposes. That was true for the competency hearing since it "determines whether a key witness will testify." Under the circumstances of this case, however, the defendant's exclusion from the hearing did not interfere with opportunity to confront the witness through cross-examination. The questions asked at the competency hearing did not relate to the crime itself (but only to each child's capacity to recall facts and distinguish between truth and falsehood), many of the background questions were repeated at trial, the children were subject to "full and complete" cross-examination at trial, and the judge's preliminary ruling at the in-chambers hearing was subject to reconsideration in light of the witnesses' trial testimony. In addition, the due process component of the defendant's right of presence was not violated as defendant's personal participation in the hearing would not have borne "a substantial relationship to [the] defendant's opportunity better to defend himself at trial." [19]

---

[19] The Court noted that there might have been such a relationship if the children had been asked in the competency hearing to discuss their "upcoming substantive testimony." The dissenters in *Stincer* took a somewhat broader view of the factors that should be considered in determining whether there is a constitutional right to presence at an in-chambers proceeding. The dissenters disagreed with the majority's conclusion that the functions of the Confrontation Clause were fully served by the later trial proceedings. They also criticized the majority for failing to take account of the symbolic goals of the Confrontation Clause. They noted that the "appearance of fairness" is "woefully lacking," from a defendant's perspective, where defendant is not allowed to attend a closed proceeding at which "the judge, prosecutor and court-appointed counsel confer privately with the key prosecution witnesses." 482 U.S. at 748, 107 S.Ct. at 2668–69 (Marshall, J., dissenting).

6 William R. LaFave, et al., *Criminal Procedure* § 24.2(a), 314–15 (3rd ed.2007); compare *Stincer v. Commonwealth*, 712 S.W.2d 939, 940–42 (Ky.1986) ("*[T]he children's testimony was the sine qua non to the prosecution's case. Appellant's trial might not have taken place had the trial court determined that the children were not competent to testify*."); and see *People v. Stroud*, 208 Ill.2d 398, 281 Ill.Dec. 545, 804 N.E.2d 510, 517

(2004) (declining to apply *Stincer* where defendant's presence at the hearing was likely to be useful to his counsel and his defense); *People v. Lofton*, 194 Ill.2d 40, 251 Ill.Dec. 496, 740 N.E.2d 782, 798–801 (2000) (declining to apply *Stincer* where competency hearing included questioning about events that took place at time of crime).

[¶ 9] As Victim 1 was seated in the courtroom, the trial judge began the proceedings with this comment to Victim 1: "Have a seat. We have a couple of questions for you. This kind of scary stuff. Is it okay?" Victim 1 responded, "Yeah." In answer to questions from the prosecutor, Victim 1 related: his name; the spelling of his last name; his age; the date of his birth; where he went to school; the name of his current teacher; where he went to school in prior years and the names of those teachers; and the name of the town in which he was born and that his grandmother lived there. The next line of inquiry was directed at Victim 1's understanding of the difference between right and wrong and the truth and a lie. Victim 1's initial response was, "I didn't understand the question." However, when the prosecutor followed up with an example about the color of his necktie, Victim 1 indicated that it would be a lie to say it was a color that was not in the tie. He also indicated, in response to questions and suggestions from the prosecutor, that the two of them had met before on three or four occasions. The prosecutor inquired of Victim 1 what they talked about on those prior occasions and he did not appear to understand the question. The prosecutor then forthrightly asked if they had talked about Woyak. Defense counsel objected to the leading question, but the trial court overruled that objection. This exchange between the prosecutor and Victim 1 then followed:

Q. [By prosecutor] Did I tell you what happened with [Woyak] or did you tell me what happened with [Woyak]?

A. You told me.

Q. What's that?

A. Um, you told me what happened with [Woyak]

Q. Okay. I need you to be real clear here, okay? I'm going to ask you another question. Did I tell you what to say or did you tell me what happened?

A. I tell you what happened.

Q. You told me what happened?

A. Yeah.

[¶ 10] In response to further questions, Victim 1 indicated that no one had told him what to say, only that the prosecutor, his mother, his dad, and his grandma had told him to tell the truth.

[¶ 11] *The defense attorney's cross-examination was considerably lengthier than that of the prosecutor and many of the questions he asked were addressed to the substance of Victim 1's anticipated testimony.* After about a dozen questions, Victim 1 indicated that if "you tell the truth you won't go to jail." [3] That answer caused an interruption to the proceedings when the prosecutor laughed out loud. Victim 1 asked the prosecutor why he was laughing and the prosecutor answered; "Because you always worry about going to jail." The defense attorney then continued asking Victim 1 questions, including such things as if he had ever told a lie, to which he answered, "no" (although the record is not crystal clear in this regard because many answers are given in the transcript as "nodded"). The defense lawyer also asked Victim 1 about what people he had talked to about what happened with [Woyak]. Again the record is not as clear as it might be, but Victim 1 indicated that he had talked with the prosecutor, with Eileen, Tony (dad?), his mother, and his brother.

[¶ 12] In another exchange with the defense attorney, Victim 1 indicated that his mother had told him something about what happened between his infant sister and Woyak:

Q. [By defense attorney] What did your mom talk to you about [your sister] for?

A. She told me what happened.

Q. She told you what happened?

A. (Nodded.)

---

3. *Defense counsel contended that Victim 1's answers indicated that Victim 1 had been led to believe that if he did not tell the "truth" he could be arrested and jailed.*

Q. What was that?

A. I don't know why she told me.

Q. What did she tell you happened?

A. She just told me that—tell me—I don't know, that's from a long time ago. I don't know what she said.

Q. But she told you something happened to [sister]?

A. (Nodded.)

Q. Is that right?

A. She told me what happened with [Woyak] and [sister] too.

Q. Okay. What did she say happened between [Woyak] and [sister]?

A. I don't understand the question.

Q. Do you remember your mom telling you something about [sister] and [Woyak]?

A. I don't know if she did or not. Maybe she did.

Q. Maybe she didn't?

A. (Nodded.)

Q. Okay. Did you talk to your brother about this?

A. No.

Q. No.

A. My brother had a secret with my mom.

Q. What secret was that?

A. About don't—she told me that—don't tell anybody what happened, just tell the people that are going to talk to you.

Q. Your mom said that?

A. To keep a secret?

Q. Uh-huh, who said that?

A. My brother . . .

Q. Did you and your brother talk and you decided to keep it a secret?

A. (Nodded.)

Q. Is that right?

A. (Nodded.)

Q. Yeah?

A. (Nodded.)

Q. Okay?

A. And my dad keeps—he tells us what happened and keeps it on his gray computer. He did keep it on the gray computer and my mom smashed it.

Q. You told your dad and your dad kept it on the computer?

A. (Nodded.)

Q. Who is your dad?

A. Tony.

Q. Tony?

A. He lives with us now.

Q. How long has he been your dad?

A. I don't know.

Q. Do you know if it's been more than a year?

A. (Nodded.)

Q. Do you know what a year is?

A. Yeah.

Q. Do you know what year it is right now?

A. What? The day?

Q. Do you know what day it is?

A. Tuesday.

Q. Do you [know] what date it is?

A. No.

Q. Do you know what month it is?

A. Yeah—nope.

Q. Do you know what year it is?

A. No.

Q. Do you remember talking about this with some other people like Lynn Huylar? Do you know that name?

A. (Nodded.)

Q. Okay. What about some people in Casper?

A. Yeah.

Q. Who was that?

A. Leslie.

Q. Leslie. Do you remember saying things to the effect that you were afraid to get arrested?

A. Afraid? I can't remember.

Q. At least that—

A. I was not afraid to go to jail in Casper right now.

Q. Do you remember making that statement to her? Do you remember telling her that?

A. (Nodded.)

Q. No. Okay. Do you remember when you spoke to her?

A. No.

[¶ 13] Following this line of questioning, the defense attorney asked questions about things Victim 1 had done in the recent past, as well as about things that happened during November and December of 2006. During this questioning, Victim 1 stated that he did not remember what Woyak did to him and his brother. However, on the very next day of the trial, he testified to Woyak having committed several acts of sexual misconduct with him and his brother as the victims.

[¶ 14] It is clear to us from the record that neither the district court nor the prosecutor perceived the proceedings to be a taint hearing, but rather only a very basic competency hearing. It is also clear that the defense attorney perceived the hearing to be primarily a taint hearing, but also a competency hearing with "taint" being a very significant and, perhaps, the most important factor in Victim 1's competence to testify truthfully. *Most importantly, it is apparent that the questioning of Victim 1 went well beyond the sort of simple "competency" questions contemplated by the U.S. Supreme Court in Stincer. Rather, it included many questions about the substantive testimony to be given by Victim 1 and the circumstances of the crimes with which Woyak was charged. Given these attendant facts, Woyak's presence could well have been a significant aid to his attorney in formulating additional questions, as well as additional lines of questioning.*

### The Governing Law

[¶ 15] Wyo. Const. art. 1, § 10 (which is similar to the Sixth Amendment to the United States Constitution) provides:

### § 10. Right of accused to defend.

In all criminal prosecutions the accused shall have the right to defend in person and by counsel, to demand the nature and cause of the accusation, to have a copy thereof, to be confronted with the witnesses against him, to have compulsory process served for obtaining witnesses, and to a speedy trial by an impartial jury of the county or district in which the offense is alleged to have been committed. When the location of the offense cannot be established with certainty, venue may be placed in the county or district where the corpus delecti [delicti] is found, or in any county or district in which the victim was transported.

[¶ 16] Wyo. Stat. Ann. § 7–11–202 (Lexis-Nexis 2009) provides:

### § 7–11–202. Presence of defendant.

Except as otherwise provided by this section, the defendant shall be present at the arraignment, at every stage of the trial, including the impaneling of the jury, and the return of the verdict and at the imposition of sentence. In prosecution for offenses not punishable by death, the defendant's voluntary absence after the trial has been commenced in his presence shall not prevent continuing the trial to and including the return of the verdict. A corporation may appear by counsel for all purposes. In prosecutions of all misdemeanor cases, the court, with the written consent of the defendant, may permit arraignment, plea, and imposition of sentence in a defendant's absence. The defendant's presence is not required at a reduction of sentence hearing.

[¶ 17] W.R.Cr.P. 43 provides:

### Rule 43. Presence of defendant.

(a) *Presence Required.*—The defendant shall be present at the initial appearance at the arraignment, at the time of the plea, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by this rule.

(b) *Continued Presence Not Required.*—The further progress of the trial to and including the return of the verdict shall not be prevented and the defendant shall be considered to have waived the right to be present whenever a defendant, initially present:

(1) Is voluntarily absent after the trial has commenced (whether or not the defendant has been informed by the court of the obligation to remain during the trial); or

(2) After being warned by the court that disruptive conduct will cause the removal

of the defendant from the courtroom, persists in conduct which is such as to justify exclusion from the courtroom.

(c) *Presence Not Required.*—A defendant need not be present in the following situations:

(1) A corporation may appear by counsel for all purposes;

(2) In prosecutions for offenses punishable by fine or by imprisonment for not more than one year or both, the court, with the written consent of the defendant, may permit arraignment, plea, trial, and imposition of sentence in the defendant's absence;

(3) At a conference or argument upon a question of law; and

(4) At a reduction of sentence under Rule 35.

■ [¶ 18] Whether or not a defendant's right to be present at a specific trial proceeding in his case has been violated is a question of law that we review *de novo. DeMillard v. State,* 2008 WY 93, ¶ 8, 190 P.3d 128, 130 (Wyo.2008) (citing *Seeley v. State,* 959 P.2d 170, 175 (Wyo.1998)); *Maupin v. State,* 694 P.2d 720, 722–24 (Wyo.1985) (defendant's absence due to heart attack not voluntary and proceedings conducted in his absence not harmless beyond a reasonable doubt; conviction reversed and case remanded for further proceedings); compare *Monroe v. State,* 2006 WY 5, ¶¶ 18–21 126 P.3d 97, 103–4 (Wyo. 2006); *Hauck v. State,* 2001 WY 119, ¶ 18, 36 P.3d 597, 602 (Wyo.2001); *Abeyta v. State,* 2003 WY 136, ¶¶ 23–25, 78 P.3d 664, 670–71 (defendant must be present at sentencing); *Belden v. State,* 2003 WY 89, ¶¶ 52–53, 73 P.3d 1041, 1090 (Wyo.2003).

■ [¶ 19] We hold that it was an error of law for the district court to deny Woyak the right to be present at the competency/taint hearing under the circumstances of this case. For this reason we are compelled to reverse his convictions because there is no viable basis for a determination by this Court that this error was harmless beyond a reasonable doubt.

### Nature and Extent of Competency Hearing—Was Victim 1 Competent

[¶ 20] We have recently summarized the purposes and parameters of a competency hearing:

Mr. Sisneros filed a motion requesting a competency/taint hearing. At the hearing, he withdrew his claim of taint and the district court proceeded to determine whether KF was competent to testify. Mr. Sisneros claims the district court erred by ruling KF was competent to testify at trial against him.

Pursuant to W.R.E. 601, any person is competent to be a witness unless he is otherwise disqualified from testifying. Our precedent discusses the specific requirements for competency:

"A person is generally competent to testify if he can understand, receive, remember and narrate impressions and is sensible to the obligations of the oath taken before testifying."

*Watters v. State,* 2004 WY 155, ¶ 14, 101 P.3d 908, 914 (Wyo.2004) (some citations omitted). The district court has broad discretion in determining whether a witness is competent to testify. *Id.* See also, *Larsen v. State,* 686 P.2d 583, 585 (Wyo.1984).

With regard to children, "[i]ntelligence, not age, is the proper criteria" in determining the competency of a witness. *Larsen,* 686 P.2d at 585. The difficulty with cases involving the allegations of sexual improprieties with young children is evident. As we stated in *Larsen:*

"... On the one hand, in accepting the testimony of a child there is the danger that she may not be telling the truth, in which event an innocent man may be convicted of crime and suffer the consequences thereof. On the other, if the child's testimony is not accepted, a man guilty of crime, and possibly with the potential for more such, will go free. In this connection, it must be borne in mind that when such an offense [assaulting and taking indecent liberties upon a child] is committed, it is done with the greatest possible stealth and secrecy, so that most often the testimony of the victim, coupled with the type of corrobo-

ration we have here, is the only evidence available upon which to determine guilt or innocence. The fact that there are difficulties involved should not prevent the processes of justice from functioning."

*Larsen,* 686 P.2d at 585–86, quoting *State v. Smith,* 16 Utah 2d 374, 401 P.2d 445, 447 (1965). Recognizing these concerns, *"once the child's competency is called into question by either party, it is the duty of the court to make an independent examination of the child to determine competency, and that determination will not be disturbed unless shown to be clearly erroneous." Watters,* ¶ 14. A five-part test is utilized to determine the competency of child witnesses:

"(1) an understanding of the obligation to speak the truth on the witness stand;

(2) the mental capacity at the time of the occurrence concerning which he is to testify, to receive an accurate impression of it;

(3) a memory sufficient to retain an independent recollection of the occurrence;

(4) the capacity to express in words his memory of the occurrence; and

(5) the capacity to understand simple questions about it."

*Id.,* quoting *Larsen,* 686 P.2d at 585. [Emphasis added.]

*Sisneros v. State,* 2005 WY 139, ¶¶ 31–33, 121 P.3d 790, 800–1(Wyo.2005).

[¶ 21] In *English v. State,* 982 P.2d 139, 145–147 (Wyo.1999) we explained the relationship between a competency hearing and a taint hearing **and provided explicit guidance to the district courts for the conduct of such hearings:**

English's next evidentiary claim of error is that the district court erred when it denied his motions for competency and taint hearings. English admits that a pretrial "taint hearing" is an unknown procedure in Wyoming law; however, he has attempted to persuade us that the procedure should be adopted in Wyoming. The State has responded by disputing the necessity of such a procedure. Unlike the parties, we find that resolution of the issue

is forthcoming only when the concepts of competency and taint are not unnecessarily complicated by segregation. We endeavor here to clarify the state of the law in Wyoming on this issue.

The Wyoming Rules of Evidence provide that "[e]very person is competent to be a witness except as otherwise provided in these rules." W.R.E. 601. "A person is generally competent to testify if he can understand, receive, remember and narrate impressions and is sensible to the obligations of the oath taken before testifying." *Simmers[ v. State],* 943 P.2d [1189] at 1199 [Wyo.1997]; *Larsen v. State,* 686 P.2d 583, 585 (Wyo.1984). "Intelligence, not age, is the guiding criteria in determining the competency of a witness." *Baum v. State,* 745 P.2d 877, 879 (Wyo.1987). It is a well-established principle of law that competency of witnesses to testify is a question within the sound discretion of the trial court. *Selby v. Savard,* 134 Ariz. 222, 655 P.2d 342, 347 (1982); *People v. Estorga,* 200 Colo. 78, 612 P.2d 520, 524 (1980); *State v. Joblin,* 107 Idaho 351, 689 P.2d 767, 771 (1984); *State v. Howard,* 247 Mont. 370, 806 P.2d 1038, 1039 (1991). However, when children are called into the courtroom to testify, we have held that once the child's competency is called into question by either party, **it is the duty of the court** to make an independent examination of the child to determine competency, and that determination will not be disturbed unless shown to be clearly erroneous. *Burt v. Burt,* 48 Wyo. 19, 41 P.2d 524, 525 (1935) (*quoting* 5 Jones Commentaries on Evidence 3958, 3959, § 2107 (2d ed.)). See also *Punches v. State,* 944 P.2d 1131, 1136 (Wyo.1997); *Trujillo v. State,* 880 P.2d 575, 579 (Wyo. 1994); *Baum,* 745 P.2d at 879; and *Larsen,* 686 P.2d at 585. [Emphasis in original.]

We have directed the district courts to utilize a five-part test for determining the competency of child witnesses:

"(1) an understanding of the obligation to speak the truth on the witness stand;
(2) the mental capacity at the time of the occurrence concerning which he is to

testify, to receive an accurate impression of it; (3) a memory sufficient to retain an independent recollection of the occurrence; (4) the capacity to express in words his memory of the occurrence; and (5) the capacity to understand simple questions about it."

*Larsen,* 686 P.2d at 585 (*quoting State v. Allen,* 70 Wash.2d 690, 424 P.2d 1021 (1967)).

The New Jersey Supreme Court, prompted by its recognition that children can be susceptible to suggestive interview techniques and that such techniques can undermine the reliability of a child's account of actual events, adopted a procedure termed a "taint hearing." *[State v. ] Michaels,* [136 N.J. 299,] 642 A.2d [1372] at 1382–84 [1994].

> The [New Jersey] Supreme Court held that a pretrial "taint" hearing was the appropriate method of determining whether the investigatory interrogations and interviews "were so suggestive that they give rise to a substantial likelihood of irreparably mistaken or false recollection of material facts bearing on defendant's guilt." * * * The Court held that the initial burden of triggering the taint hearing is on the defendant, who must make a showing of "some evidence" that the victim's statements were the result of suggestive interview techniques. * * *

> The factors that should be considered in assessing the reliability of a complaint regarding sexual offenses are: "(1) the age of the victim; (2) circumstances of the questioning; (3) the victim's relationship with the interrogator; and (4) the type of questions asked." * * * Undue suggestiveness can occur when an interviewer has a preconceived notion of what has happened to a child, the interviewer uses leading questions, the interviewer is a trusted authority figure, the person accused of wrongdoing is vilified during the interview, or the interviewer uses threats or rewards to pressure the child.

*State v. Scherzer,* 301 N.J.Super. 363, 694 A.2d 196, 245–46, cert. denied, 151 N.J. 466, 700 A.2d 878 (1997) (*summarizing and quoting Michaels,* 642 A.2d at 1377–1383).

While we agree with the reasoning of the New Jersey Supreme Court, we conclude that there is no void in Wyoming law which a "taint hearing" procedure would fill. The Washington State Supreme Court considered the issue in *Matter of Dependency of A.E.P.,* 135 Wash.2d 208, 956 P.2d 297 (1998), and found that the competency inquiry included the question of pretrial taint. That court also utilizes the five-part test to determine the competency of child witnesses:

> "The true test of the competency of a young child as a witness consists of the following: (1) an understanding of the obligation to speak the truth on the witness stand; (2) the mental capacity at the time of the occurrence concerning which he is to testify, to receive an accurate impression of it; (3) a memory sufficient to retain an independent recollection of the occurrence; (4) the capacity to express in words his memory of the occurrence; and (5) the capacity to understand simple questions about it."

*Id.* at 304 (*quoting Allen,* 70 Wash.2d 690, 424 P.2d 1021). Recognizing the overlap in competency and taint considerations, the Washington State Supreme Court said:

> We decline to adopt a pretrial taint hearing as a requirement for the reason that the existing state of the law adequately addresses Petitioner's concerns. As to the reliability of a child's testimony, a defendant can argue memory taint at the time of the child's competency hearing. If a defendant can establish a child's memory of events has been corrupted by improper interviews, it is possible the third Allen factor, "a memory sufficient to retain an independent recollection of the occurrence[,]" may not be satisfied.

*Matter of Dependency of A.E.P.,* 956 P.2d at 307 (*quoting Allen,* 70 Wash.2d 690, 424 P.2d 1021). We similarly decline to adopt a separate pretrial "taint hearing" procedure as the concerns addressed by such a procedure can be adequately addressed during the competency hearing which we

have required since 1935. We do, however, endorse the use of the factors set out in the *Michaels* decision as they relate to the question of independent recollection.

While we have repeatedly stated that a competency hearing is required, we have not fulfilled our obligation to provide guidance as to the critical next question: When is that hearing necessary? The *Michaels* court found that there must be a showing of at least "some evidence" that the victim's statements were the product of suggestive or coercive interview techniques before a "taint hearing" must be granted. *Michaels*, 642 A.2d at 1383. In contrast to this rather lenient standard, 18 U.S.C. § 3509(c) requires a showing of "compelling reasons" before the federal courts can hold a competency hearing. Other jurisdictions utilize a presumptive age, below which there exists a rebuttable presumption that a child is incompetent, and a hearing must be held. *See* Ariz.Rev.Stat. Ann. § 12–2202 (West 1994) (children under ten years of age are presumed to be incompetent). We find, given our longstanding directive requiring competency hearings, that the "some evidence" standard articulated in *Michaels* is the most compatible with existing Wyoming law. Absent legislative direction, we are unwilling to set an arbitrary age below which children are presumed incompetent. We are also unwilling to place such a high burden of proof upon a litigant that the benefits accrued from the testimony of a child are outweighed by the possibility of unreliability inherent in incompetent testimony. Therefore, we hold that whenever any party presents the court with some evidence that a child witness is incompetent, the hearing procedure is triggered.

Application of the *Michaels* factors to the case at hand reveals that sufficient evidence was presented to trigger a competency hearing, which includes consideration of whether the child's memory was tainted. First, the age of the victim, five years old, weighs heavily in favor of granting the competency hearing. Second, the circumstances surrounding the questioning of the child suggest that the child's recollection of the events in question has been tainted. At the time BNM was questioned, her mother was acting under the assumption that English had touched her, and used leading questions to elicit answers that conformed to the assumption. Third, the mother is a trusted authority figure. Fourth, the mother used rewards to pressure the child; i.e., trading secrets. Finally, a factor of great importance in this inquiry is the fact that BNM's initial statements were not spontaneous, but rather the product of interrogation.

Under the circumstances, English presented substantially more evidence of BNM's possible incompetency than is necessary to warrant a hearing on the issue; specifically, her ability to independently recall the events that took place on December 31, 1996 and January 2, 1997. Therefore, we hold that the district court erred in denying the motion for a competency hearing. (FN2)

> (FN2.) We do not, by this decision, mandate the particular time or form of the hearing required. Some cases may be more properly heard prior to trial and some may be more properly heard during trial outside the hearing of the jury.

■ [¶ 22] While we are compelled to reverse Woyak's conviction and remand this matter for further proceedings because he had an absolute right to be present at the competency hearing, we need not dispositively address the question of whether Victim 1 was competent, whether that was because of factors other than taint, or if taint was a component (or even perhaps the sole component) of his competence or incompetence. As emphasized above, a district court is duty bound to conduct a thorough hearing *once the child's competency is sufficiently called into question by either party.* Here we note two things. First the competence of Victim 1 was the signal issue in this case, if not the only issue of any significance to Woyak's defense. In footnote 2, immediately above, quoted from the *English* case, we did not mandate a competency/taint hearing at any particular point in the proceedings. However, we deem it an oversight by the parties and by the trial court to have sandwiched that issue into a 45–minute time span

while the jury was at lunch. *It suggests two things: (1) that the parties were remiss in aiding the district court in recognizing the importance and significance of the issue and the necessity for conducting a meaningful hearing into the competency/taint matters; and (2) that the timing of the hearing did not permit adequate flexibility for a more comprehensive hearing, in light of the taint and competency flaws that became evident at (and before) the limited hearing that was conducted. In this case, the appropriate time for such a hearing would have been before jury selection, in a time slot that allowed adequate time for a complete exploration of the issues brought to the fore by the defense counsel, and in a working space that allowed for Victim 1's comfort and Woyak's right to be present.*

■ [¶ 23] Our conclusion in this regard is buttressed by Wyo. Stat. Ann. § 7–11–408 (LexisNexis 2009). That statute allows for videotape depositions in child sexual assault/abuse cases, where circumstances warrant. The defendant is allowed to be present at such depositions and must be able to exercise the right of confrontation at those proceedings. See *Bowser v. State*, 2009 WY 54, ¶¶ 8–15, 205 P.3d 1018, 1021–24 (Wyo. 2009). This is an area of the law that is *steadily maturing,* and various jurisdictions have developed *useful models* for resolving the thorny issues that are at large in such cases. For instance, a pertinent federal statute provides that a competency hearing need be held only if the court determines, on the record, that compelling reasons exist (age alone is not a compelling reason) for such a hearing. 18 U.S.C. 3509(c)(4). The defendant is not permitted to be present at such a hearing. 18 U.S.C. 3509(c)(5). The questioning of the child is quite limited and is usually conducted by the presiding judge. 18 U.S.C. 3509(c)(7)(8). The treatise, 1 Paul DerOhannesian II, *Sexual Assault Trials* § 5.2 (3rd ed.2006) provides considerable guidance in this regard, including an example of a "Q and A" for a judge to use in such a hearing. 2 Paul DerOhannesian II, *Sexual Assault Trials,* Appendix K (3rd ed.2006). As another example, Nevada has adopted a more stringent rule:

Appellants raise a threshold contention that the district court erred in finding Susan and Patricia competent to testify. This court has concluded that a child is competent if he or she has the capacity to receive just impressions and possesses the ability to relate them truthfully. *Lanoue v. State*, 99 Nev. 305, 307, 661 P.2d 874, 875 (1983) (competency determination held improper where trial testimony of five-year-old witness was not clear, relevant, and coherent and suggested a substantial amount of coaching). Although courts must evaluate a child's competency on a case-by-case basis, some relevant factors to be considered include: (1) the child's ability to receive and communicate information; (2) the spontaneity of the child's statements; (3) indications of "coaching" and "rehearsing;" (4) the child's ability to remember; (5) the child's ability to distinguish between truth and falsehood; and (6) the likelihood that the child will give inherently improbable or incoherent testimony.

The district court considered the children's competency as it existed at several different points in time, including the times of the alleged crimes, the times of the hearsay statements, and the time of trial. *See* Comment, *The Competency Requirement For the Child Victim of Sexual Abuse: Must We Abandon It?*, 40 U. Miami L.Rev. 245, 262 n. 75 (1985); *see also State v. Justiniano*, 48 Wash.App. 572, 740 P.2d 872, 875 n. 4 (1987). But even a finding of incompetency at trial (due, for example, to extreme nervousness) does not necessarily preclude the possibility that a child was competent at an earlier time. *Id.* 740 P.2d at 874. And, conversely, a child may be generally competent to testify, but not specifically competent to testify about a criminal event that occurred years earlier. *See Gov't of V.I. v. Riley*, 750 F.Supp. 727 (D.Vi.1990). The children's very young ages, the length of time between the alleged CSA and its disclosure, and the suggestive interviewing practices make the competency determinations difficult in this case.

*Felix v. State*, 109 Nev. 151, 849 P.2d 220, 235–36, (1993); also see 1 Paul DerOhannesian II, *supra*, § 5.6.

[¶ 24] Our expectation is that additional proceedings would continue in this case upon remand, and one of the principal orders of business would be a comprehensive consideration of the question of Victim 1's competence to be a witness against Woyak, to be conducted by the district court, with the assistance of counsel, in light of the authorities cited above as well as others which the trial court and parties might bring to bear on this issue.

## Competence of Victim 1

[¶ 25] Because we have determined that reversible error occurred when the district court excluded Woyak from the competency hearing, which we deem to be a critical stage of the trial proceedings *in this case,* and which error we conclude was not harmless beyond a reasonable doubt *under the circumstances presented by this case,* we will not substantively deal with the soundness of the district court's conclusion that Victim 1 was competent to testify. We note only that the hearing held below was inadequate, and we trust that if this issue arises again, that it will then be given the attention needed to meaningfully determine if Victim 1 is competent to testify, including whether or not his testimony was tainted by the many persons who talked with him about the case during the time following the incidents that brought Woyak's alleged conduct to light.

## Instructions

■ [¶ 26] Again, our decision that Woyak was denied his right to be present at the competency/taint hearing is dispositive so we will only briefly mention that Counts IV and V of the verdict form do pose a bit of a problem which demands closer attention in any additional proceedings. In Counts IV and V, Woyak is charged with causing each of the victims to engage in explicit sexual conduct. The instructions defined "explicit sexual conduct" thus: " 'Explicit sexual conduct' means actual or simulated sexual intercourse, including genital-genital, oral-genital, anal-genital or oral-anal, contact between persons of the same or opposite sex, bestiality, masturbation, sadistic or masochistic abuse or lascivious exhibition of the genitals

or pubic area of any person." *Dettloff v. State,* 2007 WY 29, ¶¶ 31–32, 152 P.3d 376, 384–85 (Wyo.2007) notwithstanding, the instruction at issue here is no mere "definitional instruction." The evidence could well support a finding of guilt on any one of several of the acts included within the boundaries of the definition set out above. See *Tanner v. State,* 2002 WY 170, ¶¶ 7–18, 57 P.3d 1242, 1244–48 (Wyo.2002). It is impossible to tell which jurors found which act or acts to have constituted the violation of the statute. In any further proceedings more care should be taken in crafting any such instructions.

## CONCLUSION

[¶ 27] The judgment and sentence of the district court is reversed because Woyak was denied his right to be present at the competency/taint hearing. This matter is remanded to the district court for further proceedings consistent with this opinion.

HILL, J., delivers the opinion of the Court; BURKE, J., filed a dissenting opinion.

BURKE, Justice, dissenting.

[¶ 28] I respectfully dissent. The majority reverses Defendant's five felony convictions on the basis that he had "the right to be present at the competency/taint hearing under the circumstances of this case." I disagree. Defendant has not established that he had the right, constitutional or otherwise, to be present at the hearing. In addition, I am troubled by the lack of meaningful guidance for future cases. If the decision to exclude is dependent on the circumstances, this Court should provide clear guidance to trial courts for deciding when exclusion is permissible. If exclusion is never permissible, the opinion should state so unequivocally.

[¶ 29] This is a case of first impression for this Court. We are called upon to decide whether a defendant has the constitutional right to be present at a hearing to determine a child victim's competency to testify regarding alleged sexual crimes. The basis for the majority's resolution of that issue is difficult to discern. On one hand, the opinion indicates that the defendant had the "absolute

right" to be present, suggesting that the right is constitutional in nature. The majority does not specify the basis of that right, but it appears to be either the Confrontation Clause of the Sixth Amendment to the United States Constitution or the Due Process Clause of the Fourteenth Amendment. On the other hand, the holding of this opinion is specifically limited to the "circumstances of this case," suggesting that the right is not absolute. If it is not absolute, then every decision to exclude a defendant from a competency hearing necessarily requires the balancing of the defendant's right to be present against the need for protection of the child victim.

[¶ 30] Defendant contends that, because the hearing took place during trial, his presence was required by Wyo. Stat. Ann. § 7-11-202 and W.R.Cr.P. 43(a). Both provide: "The defendant shall be present at ... every stage of the trial." The majority quotes the statute and the rule but does not specifically rest its determination on either. It also indicates that the competency hearing should have taken place prior to trial. The timing of the hearing, however, should not be dispositive.

[¶ 31] As we have previously recognized, a competency hearing may be held before or during trial. *English*, 982 P.2d at 147 n. 2. Further, it makes little sense to determine the existence of constitutional rights based upon the timing of the hearing. As the Supreme Court recognized in *Stincer*:

> Distinguishing between a "trial" and a "pretrial proceeding" is not particularly helpful here, however, because a competency hearing may well be a "stage of trial." In this case, for instance, the competency hearing was held after the jury was sworn, in the judge's chambers, and in the presence of opposing counsel.... Instead of attempting to characterize a competency hearing as a trial or pretrial proceeding, it is more useful to consider

whether excluding the defendant from the hearing interferes with his opportunity for effective cross-examination.

482 U.S. at 739–40, 107 S.Ct. at 2664. The Supreme Court in *Stincer* concluded that the defendant's exclusion from the competency hearing did not infringe upon either his confrontation or his due process rights. *Id.* at 744–45, 107 S.Ct. at 2667.

[¶ 32] The result reached by the majority appears to be the first of its kind. The majority has not identified any case from any jurisdiction reversing a conviction because the defendant was excluded from a child victim's competency hearing.[4] The majority attempts to find support in *Stincer*, 482 U.S. 730, 107 S.Ct. 2658. Properly analyzed and applied, however, *Stincer* does not support the decision reached by the majority.

[¶ 33] The procedural format of the *Stincer* competency hearing was remarkably similar to the procedure utilized in the instant case.

> After a jury was sworn, but before the presentation of evidence, the court conducted an in-chambers hearing to determine if the two young girls were competent to testify. Over his objection, respondent, but not his counsel ..., was excluded from this hearing.... [T]he judge, the prosecutor, and respondent's counsel asked questions of each girl to determine if she were capable of remembering basic facts and of distinguishing between telling the truth and telling a lie.

*Id.* at 732–33, 107 S.Ct. at 2660 (footnote omitted). The issue presented in *Stincer* was nearly identical to the question facing this Court. The Supreme Court stated the issue this way:

> The question presented in this case is whether the exclusion of a defendant from a hearing held to determine the competency of two child witnesses to testify violates

---

4. In *Stincer v. Commonwealth*, 712 S.W.2d 939 (Ky.1986), quoted in paragraph eight of the majority opinion, the Kentucky Supreme Court reversed a conviction because the defendant was excluded from the competency hearing of the child victims. That decision, however, was overturned by the United States Supreme Court in

*Stincer*, 482 U.S. 730, 107 S.Ct. 2658. The majority also cites *People v. Stroud*, 208 Ill.2d 398, 281 Ill.Dec. 545, 804 N.E.2d 510, 517 (2004) and *People v. Lofton*, 194 Ill.2d 40, 251 Ill.Dec. 496, 740 N.E.2d 782, 798–801 (2000). Neither of those cases involves the determination of a child victim's competency to testify.

the defendant's rights under the Confrontation Clause of the Sixth Amendment or the Due Process Clause of the Fourteenth Amendment.

*Id.* at 732, 107 S.Ct. at 2660.

[¶ 34] The Court in *Stincer* first addressed the confrontation issue. Although the defendant had been excluded from the competency hearing, the Court found no confrontation violation because there was no restriction of the defendant's ability to cross-examine the child victims at trial. The Court explained:

> [t]he two children ... testified in open court.... [They] were subject to full and complete cross-examination, and were so examined. Respondent was present throughout this cross-examination and was available to assist his counsel as necessary. There was no Kentucky rule of law, nor any ruling by the trial court, that restricted respondent's ability to cross-examine the witnesses at trial. Any questions asked during the competency hearing, which respondent's counsel attended and in which he participated, could have been repeated during direct examination and cross-examination of the witnesses in respondent's presence. See *California v. Green*, 399 U.S. [149], 159, 90 S.Ct. [1930], 1935[, 26 L.Ed.2d 489 (1970) ] ("[T]he inability to cross-examine the witness at the time he made his prior statement cannot easily be shown to be of crucial significance as long as the defendant is assured of full and effective cross-examination at the time of trial").

*Id.* at 740, 107 S.Ct. at 2664–65 (record citations omitted). The Court rejected the defendant's confrontation claim: "[W]e conclude that respondent's rights under the Confrontation Clause were not violated by his exclusion from the competency hearing of the two girls." *Id.* at 744, 107 S.Ct. at 2667.

[¶ 35] If we apply the *Stincer* analysis to Defendant's confrontation claim, we must reach the same conclusion. Defendant was present at trial and the child victim was cross-examined at length by defense counsel. Cross-examination was not restricted in any manner at trial. Any questions asked by defense counsel during the competency hear-ing could have been asked again during trial, in Defendant's presence. There was no violation of Defendant's confrontation rights.

[¶ 36] Defendant also contends that his due process rights were violated. A defendant has a constitutional due process right to be "present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure." *Id.* at 745, 107 S.Ct. at 2667. The majority essentially concludes that the competency hearing was a critical stage of the trial because, if the child victim was not competent to testify, conviction would have been unlikely. This approach was rejected by the Supreme Court in *Stincer*:

> We note once again that the Kentucky Supreme Court held that respondent's confrontation rights were violated because the competency hearing was a "crucial phase of the trial." 712 S.W.2d, at 940. It is true that the hearing was crucial in the sense that respondent may not have been convicted had the two girls been found incompetent to testify. Nevertheless, the question whether a particular proceeding is critical to the outcome of a trial is not the proper inquiry in determining whether the Confrontation Clause has been violated. The appropriate question is whether there has been any interference with the defendant's opportunity for effective cross-examination. No such interference occurred in this case. Of course, the fact that a stage in the proceeding is critical to the outcome of a trial may be relevant to due process concerns. Even in that context, however, the question is not simply whether, "but for" the outcome of the proceeding, the defendant would have avoided conviction, but whether the defendant's presence at the proceeding would have contributed to the defendant's opportunity to defend himself against the charges.

*Id.* at 744 n. 17, 107 S.Ct. at 2667 n. 17.

[¶ 37] The Supreme Court in *Stincer* ultimately rejected the defendant's due process challenge because he failed to establish that "his presence at the competency hearing in this case would have been useful in ensuring a more reliable determination as to whether

the witnesses were competent to testify." *Id.* at 747, 107 S.Ct. at 2668. The Court explained:

> He has presented no evidence that his relationship with the children, or his knowledge of facts regarding their background, could have assisted either his counsel or the judge in asking questions that would have resulted in a more assured determination of competency. On the record of this case, therefore, we cannot say that respondent's rights under the Due Process Clause of the Fourteenth Amendment were violated by his exclusion from the competency hearing. As was said in *United States v. Gagnon,* 470 U.S. 522, 527, 105 S.Ct. 1482, 148[5], 84 L.Ed.2d 486 (1985) (*per curiam*), there is no indication that respondent "could have done [anything] had [he] been at the [hearing] nor would [he] have gained anything by attending."

*Id.* (footnotes omitted).

[¶ 38] The same analysis applies here. Defense counsel did not, at any time before or during the hearing, assert that Defendant's presence was necessary to aid counsel in formulating questions or additional lines of inquiry. Defense counsel did not seek leave to confer with his client prior to ending his questioning. Other than the initial objection to the State's request, defense counsel did not raise the subject of Defendant's absence from the hearing again. Defendant identifies no question that went unasked because of his absence during the competency hearing. The defendant here is in exactly the same position as the defendant in *Stincer.* He has failed to demonstrate that his presence at the competency hearing would have benefitted his defense in any way. If *Stincer* is the guide, the inescapable conclusion is that the defendant has failed to establish any violation of his due process rights.

[¶ 39] Before leaving the due process discussion, it should be noted that the Supreme Court in *Stincer* did not hold that a defendant has a constitutional due process right to attend the competency hearing of a child victim. At most *Stincer* indicated, in some situations, a due process violation may occur if a defendant is excluded from a competency hearing. This is not one of those situations.

[¶ 40] In determining whether a defendant should be excluded, the trial court must balance the defendant's role in assisting in his defense against the risk of injury to the child victim. *Id.* at 746 n. 20, 107 S.Ct. at 2668 n. 20. The majority opinion fails to recognize the importance of protecting the child victim as a factor to be considered in that balancing test. That result is not justified by any authority cited in the majority opinion. In fact, the opinion favorably references legal authority that mandates exclusion of the defendant from the competency hearing.

[¶ 41] The majority recognizes that the law in this area is "steadily maturing," and identifies a federal statute as a "useful model" for future development of competency hearing procedures. That statute, 18 U.S.C. § 3509(c)(4) and (5), was enacted in 1990, three years after the *Stincer* decision was issued, as part of the Child Victims' and Child Witnesses' Rights Act. The statute bars a defendant from attending the competency hearing of a child victim.[5] The existence of the mandatory exclusion in the federal statute calls into question the validity of any due process challenge based upon a defendant's exclusion from the hearing. If a defendant can be barred from a competency hearing by federal statute, how can it be error of a constitutional magnitude for a defendant to be excluded from a similar competency hearing in a Wyoming district court? The constitutional guarantees at issue are

**5.** 18 U.S.C. § 3509(c)(4) and (5) provides:

(4) Requirement of compelling reasons. A competency examination regarding a child may be conducted only if the court determines, on the record, that compelling reasons exist. A child's age alone is not a compelling reason. (5) Persons permitted to be present. The only persons who may be permitted to be present at a competency examination are-

(A) the judge;
(B) the attorney for the Government;
(C) the attorney for the defendant;
(D) a court reporter; and
(E) persons whose presence, in the opinion of the court, is necessary to the welfare and well-being of the child, including the child's attorney, guardian ad litem, or adult attendant.

the same in both situations. Defendant has not asserted that the Wyoming Constitution affords him more rights in this area than he is guaranteed under the United States Constitution.

[¶ 42] Our legislature has not provided the same protections to child victims as Congress did in the Child Victims' and Child Witnesses' Rights Act. In Wyoming, a trial judge must still balance a defendant's due process rights against the need to protect child victims. While exclusion might be appropriate in some situations, less restrictive protections may be appropriate in other cases. Because a defendant's confrontation rights are not at issue in a competency hearing of a child victim, eye contact and face to face confrontation between the child and the defendant are not required.[6]

[¶ 43] The majority opinion appears to conclude that Defendant's rights were violated because questions relating to substantive testimony were asked or might have been asked during the competency hearing. But every competency hearing presents that possibility. Among the factors to be considered when determining the competency of a child victim are whether the child has "a memory sufficient to retain an independent recollection **of the occurrence,** [and] the capacity to express in words his memory **of the occurrence.**" *English,* 982 P.2d at 146 (emphasis added). When demonstrating a recollection of the occurrence and expressing it in words, it is always possible that the witness may testify about the incident. Additionally, the majority fails to recognize that the trial court must determine whether exclusion is appropriate at the beginning of the competency hearing. The "circumstances" cited by the majority in support of its decision all occurred during the hearing.

[¶ 44] The opinion also suggests that the timing of the hearing (during trial), the length of the hearing (opportunity to fully explore competency and taint), and the differing perceptions of the trial court and counsel regarding the purpose of the hearing (competency versus taint) all played a role in its decision. I am unable to find any legal or factual support for those assertions. Additionally, and perhaps most significantly, Defendant has not asserted any error in this appeal relating to any of those factors. He contends only that error occurred because he was excluded from the competency hearing.

[¶ 45] As mentioned previously, there is no legal basis for challenging the timing of the hearing. *See English,* 982 P.2d at 147 n. 2. Defendant did not object to the scheduling of the hearing at trial and does not contend that he was restricted in any fashion from exploring competency and taint in detail at the competency hearing. Counsel and the district court clearly understood the significance and purpose of the hearing. At the conclusion of the hearing, the district court indicated that it felt that competency was a close question and briefly took that issue under advisement before rendering a decision finding the child victim competent to testify. As for taint, the district court had no difficulty concluding that taint had not been established. Defense counsel essentially abandoned his claim of taint and relied solely upon his contention that the witness was incompetent:

[PROSECUTION]: Well, I'm not sure of what . . . the Court wants the procedure to be here. I know we were doing a competency slash taint hearing. **I didn't hear argument whatsoever as far as taint is concerned.** So maybe we're just talking about strict competency.

THE COURT: I don't think there's any . . . the defense is required, quote, to make the showing of some evidence that the victim's statement[s] were the product of suggestive or coercive interview techniques.

---

6. It is also worth noting that the confrontation challenge raised by Defendant here is vastly different than that presented in *Bowser,* 205 P.3d 1018. In *Bowser,* the trial testimony of the child victim was presented by video deposition. The defendant was permitted to attend the deposition but was shielded from the child victim. The procedure utilized did not meet statutory requirements for the use of the deposition testimony and we found that the defendant's confrontation rights were violated. We reversed the conviction. In this case, the challenge is to the procedure used at the competency hearing. Competency hearing testimony is not trial testimony. The testimony presented at the competency hearing was not used at trial.

The only information that came out about that particular element is that [the victim] said that he told [S.] and [E.] and the others what happened rather than having somebody suggest to him what happened. So **I am satisfied that his testimony has not been tainted.**

[DEFENSE COUNSEL]: Well, Your Honor, if I can speak to that. **I would say that I couldn't even question—have any effective questioning about taint with him.** I asked questions and he didn't respond to a number of things about who he talked to, about who told him to say whatever, even understanding the difference between right and wrong, he had no answer. The difference between a truth and a lie, he had no answer until led by [the Prosecutor] about the tie situation.

**But concerning the taint hearing, I think it was evident that we couldn't even have a taint hearing with this witness because he couldn't answer questions about who he had spoken to and what was said to him.** I asked him questions about what was told to you by anyone.

. . .

THE COURT: **I'm talking now only about the taint issue.**

[DEFENSE COUNSEL]: Yeah. I guess the point is, Your Honor—

THE COURT: He can be incompetent to testify, but I want you to focus on now whether first of all you made a showing of some evidence that the statements were the product of suggestive or coercive interview techniques. **Now it may well be that you could provide some showing from some source other than the victim. What I have now is that there is no showing of coercive interview techniques or the victims' statements were the product of suggestive techniques.**

[DEFENSE COUNSEL]: **And I agree, Your Honor, but from this witness we weren't even able to question him about that because he wouldn't respond.** So from this witness—

THE COURT: **But you're not limited to him.**

[DEFENSE COUNSEL]: Right, I understand that, and I would present other evidence as far as discovery goes with respect to that. If you want me to address that now, I certainly would.

THE COURT: **Well, this is the taint hearing, it's your only opportunity.**

(Emphasis added.) Defense counsel did not call any additional witnesses.

[¶ 46] The district judge in this case properly balanced the important factors. It was aware of the young age of the child, the serious nature of allegations against the defendant, and the risk that the child would be traumatized if confronted by the defendant. It had the opportunity to observe the child and the defendant prior to ruling on the State's request to exclude the defendant. Based upon the information provided, the district court concluded that the defendant should be excluded from the hearing. I find no error in that decision.

[¶ 47] I would also affirm the district court's determination that the child victim was competent to testify. We have previously recognized that a district court's determination of competency will not be disturbed unless clearly erroneous. *Sisneros v. State*, 2005 WY 139, ¶ 33, 121 P.3d 790, 801 (Wyo. 2005). In evaluating whether that decision was clearly erroneous, an appellate court may review the entire record, including the trial testimony. *Stincer*, 482 U.S. at 743 n. 15, 107 S.Ct. at 2666 n. 15. After reviewing the entire record, including the child's trial testimony, I conclude that the district court's competency determination was not clearly erroneous.