2002 WY 170

**Ronald Arbie TANNER, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 01–53.

Supreme Court of Wyoming.

Nov. 20, 2002.

Kenneth M. Koski, State Public Defender, and Donna D. Domonkos, Appellate Counsel, Representing Appellant. Argument by Ms. Domonkos.

Hoke MacMillan, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Georgia L. Tibbetts, Senior Assistant Attorney General; Theodore Lauer, Director, Prosecution Assistance Program; and Hugh J. Linnehan, Student Intern, Representing Appellee. Argument by Mr. Linnehan.

Before HILL, C.J., and GOLDEN, LEHMAN,* KITE, and VOIGT, JJ.

LEHMAN, Justice.

[¶ 1] Appellant Ronald A. Tanner (Tanner) seeks reversal of his conviction for one count of burglary arising from his entry into a Casper bar, through an unlocked door, during business hours. Having determined that the record discloses insufficient evidence to support the conviction as instructed to the jury: we reverse the conviction, vacate the judgment and sentence entered by the district court, and remand with instruction that a judgment of acquittal be entered.

* Chief Justice at time of oral argument.

1. Testimony introduced at trial disclosed that the Sandbar's employees had closed the bar early without authorization and left, inadvertently

### ISSUES

[¶ 2] Tanner presents the following issues for review:

I. Whether there was sufficient evidence to support Tanner's burglary conviction?

II. Whether the prosecutor committed prosecutorial misconduct when she argued facts not in evidence and used inadmissible hearsay evidence during the closing argument?

III. Whether the trial court erred when it denied Tanner's request for a jury instruction on petit larceny as a lesser-included offense of burglary?

### FACTS

[¶ 3] Tanner was convicted of one count of burglary in violation of Wyo. Stat. Ann. § 6–3–301(a) (LexisNexis 2001) following a two-day jury trial in Natrona County. The evidence adduced at trial indicated that on Friday, July 14, 2000, he and two female companions went to the Sandbar Lounge located at 100 N. Ash Street in Casper intending to buy some drinks. At approximately 10:30 p.m., Tanner, his girlfriend Char Lee Brown, and Kathy Davis, parked in the parking area by the Sandbar's drive up window, but soon discovered that the glass doors facing First Street were locked. However, when the trio proceeded to the Ash Street entrance, they found the wooden door unlocked and entered the lounge. Tanner and Brown were new to Casper; but Davis testified at trial that, on the other occasion that she had been to the Sandbar Lounge, she had found the same conditions: the glass door was locked, the wooden door was unlocked, the lights were dim, and the bar was open for business.

[¶ 4] Upon entry, Davis and Brown went directly to the ladies restroom while Tanner approached the bar. While the women were in the restroom, Tanner called in, "come on, there's no one here, let's go." [1] Before leaving the Sandbar, Tanner urged the women to take several bottles of beer and a bottle of bourbon that had been placed beside the door.[2] He also asked Davis what she drank,

leaving the wooden door unlocked in the process.

2. The missing liquor was later valued at about $16.

and then went behind the bar. Davis and Brown left the establishment with the liquor and were immediately confronted by the Sandbar's manager, Roger Hessler. He and his girlfriend, Michelle Bouzis, had returned to the Sandbar Lounge after being alerted by another customer to the unlocked door.

[¶ 5] Brown and Davis unsuccessfully attempted to flee from Hessler, who subsequently flagged down Officer Eulberg. Meanwhile, Bouzis entered the tavern through the glass doors and confronted Tanner behind the bar near the register. Upon asking what he was doing there, Tanner replied he was "waiting for somebody to get him a drink." When Bouzis expressed skepticism at this statement, Tanner responded, "I just want to leave, I don't want any hassles." Instead, he and Bouzis went outside to join Hessler, Brown, and Davis in being questioned by Officer Eulberg. Tanner was subsequently arrested for burglary.

[¶ 6] Following Tanner's conviction for burglary, the district court entered its judgment and sentence on March 2, 2001, sentencing Tanner to a prison term of eighteen to eighty-four months. This timely appeal followed.

### DISCUSSION

 [¶ 7] Tanner asserts three claims of error on appeal. Finding the first to be dispositive, we will confine our discussion to the issue of whether there was sufficient evidence to support, beyond a reasonable doubt, his conviction for burglary in violation of Wyo. Stat. Ann. § 6–3–301.³ We review this claim under our usual standard:

> When reviewing a sufficiency of the evidence claim in a criminal case, we must determine whether a rational trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt. *Jennings v. State*, 806 P.2d 1299, 1302 (Wyo.1991) (quoting *Munson v. State*, 770 P.2d 1093, 1095 (Wyo.1989)). We do not consider conflicting evidence presented

by the unsuccessful party, and afford every favorable inference which may be reasonably and fairly drawn from the successful party's evidence. *Bloomquist v. State*, 914 P.2d 812, 824 (Wyo.1996). We have consistently held that it is the jury's responsibility to resolve conflicts in the evidence. *Id.* (citing *Wetherelt v. State*, 864 P.2d 449, 452 (Wyo.1993)). "We will not substitute our judgment for that of the jury, . . . our only duty is to determine whether a quorum of reasonable and rational individuals would, or even could, have come to the same result as the jury actually did." *Id.* (citing *Hodges v. State*, 904 P.2d 334, 339 (Wyo. 1995)).

*Williams v. State*, 986 P.2d 855, 857 (Wyo. 1999).

 [¶ 8] In asserting his claim that the evidence adduced at trial was insufficient to support his conviction, Tanner directs our attention to the Amended Information, the jury instructions, and the general verdict form signed by the presiding juror. He contends the information and the jury instructions failed to particularize which portions of the burglary statute the State was relying upon for conviction. He cites to the line of cases, including *Bush v. State*, 908 P.2d 963, 966 (Wyo.1995), which addresses jury instruction in the alternative and holds that a "verdict must be set aside in cases where the verdict is supportable on one ground, but not on another, and it is impossible to tell which ground the jury selected." (Citations omitted.) We agree that those cases are controlling on the subject and generally accept Tanner's analysis of the issue.

[¶ 9] The Amended Information, filed July 21, 2000, charged that:

> Ronald Arbie Tanner III, late of the County aforesaid, on or about the 14th day of July, 2000, in the County of Natrona, in the State of Wyoming, did unlawfully, and without authority, enter or remain in a building, occupied structure, or vehicle, or

---

3.

§ 6–3–301. Burglary; aggravated burglary; penalties.

(a) A person is guilty of burglary if, without authority, he enters or remains in a building, occupied structure or vehicle, or separately

secured or occupied portion thereof, with intent to commit larceny or a felony therein.

(b) Except as provided in subsection (c) of this section, burglary is a felony punishable by imprisonment for not more than ten (10) years, a fine of not more than ten thousand dollars ($10,000.00), or both.

separately secured or occupied portion thereof, with intent to commit larceny or a felony therein, in violation of W.S.1977, as amended, § 6–3–301(a) and (b) contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Wyoming.

As is obvious, the Amended Information was couched in the language of the statute itself with no indication of which of the foregoing circumstances was in fact being charged. Next, we review the jury instructions, including jury instructions numbers 4 and 6. Number 4 reads exactly the same as the Amended Information. Instruction number 6 provided in pertinent part that:

> The elements of the crime of Burglary, as charged in this case, are:
> 1. On or about the 14th day of July, 2000
> 2. In Natrona County, Wyoming
> 3. The Defendant, Ronald Arbie Tanner III
> 4. Without authority
> 5. Entered or remained in a building or occupied structure or vehicle, or separately secured or occupied portion of a building, occupied structure or vehicle
> 6. With intent to commit *larceny or a felony therein.*

(Emphasis added.) Lastly, we note that the jury returned its guilty verdict on the general verdict form.

[¶ 10] Turning to the law, the rule Tanner relies on has been summarized by a Wyoming commentator in this fashion:

> Whenever a jury is permitted to return a general verdict of guilty to a charge which contains alternatives, either one of which will suffice, it is possible that all the jury will not have found the same alternative. If all members of the jury have not agreed to find at least one of the alternatives necessary to convict, a unanimous verdict has not been returned.

Lauer, Barbara L., *Jury Agreement and the General Verdict in Criminal Cases*, XIX Land & Water L.Rev. 207 (1984). Early support for this proposition can also be found in the case of *State v. Tobin*, 31 Wyo. 355, 226 P. 681, 685 (Wyo.1924).

[¶ 11] More direct support is found in a number of modern cases. Beginning with *Cloman v. State*, 574 P.2d 410, 412 (Wyo. 1978) (citing *Yates v. United States*, 354 U.S. 298, 312, 77 S.Ct. 1064, 1073, 1 L.Ed.2d 1356 (1957)) this court has expressly recognized the rule set out above. In *Fife v. State*, 676 P.2d 565 (Wyo.1984), we applied the proposition to a burglary case and reversed the defendant's conviction for aggravated burglary when the jury had been instructed in the alternative and we could not determine whether its general verdict was based upon the intent to steal or the intent to commit assault with a deadly weapon. This court wrote:

> If both theories of intent submitted to the jury were sufficiently supported by the evidence, we could uphold the general verdict on the aggravated burglary charge. However, there was insufficient evidence as a matter of law to support the intent to assault element. We cannot uphold a general jury verdict when one of the alternate theories upon which the jury could have relied is in error. If one of the alternate theories submitted to the jury is unsupported by substantial evidence, the general verdict must be set aside unless the court can ascertain that the verdict was founded upon a theory supported by substantial evidence. *State v. Carothers*, 84 Wash.2d 256, 525 P.2d 731 (1974).[4]

*Fife*, 676 P.2d at 568 (citations omitted).

[¶ 12] Similarly, in *Bush v. State*, 908 P.2d 963 (Wyo.1995), we reversed the defendant's conviction for burglary. There, we reviewed the Information, the jury instruc-

---

4. As the Washington Supreme Court later recognized in a subsequent alternative instruction case, *State v. Green*, 94 Wash.2d 216, 616 P.2d 628 (1980), the substantial evidence test can no longer be applied to sufficiency of the evidence analysis following the U.S. Supreme Court's holding in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). "Accordingly, the appropriate test for determining the sufficiency of the evidence of kidnapping is *not* that applied in *Green* I, *i.e.*, whether, after viewing the evidence most favorable to the State, there is substantial evidence to support kidnapping. The issue, as framed in *Jackson v. Virginia, supra*, is whether, after viewing the evidence most favorable to the State, *any rational trier of fact* could have found the essential elements of kidnapping *beyond a reasonable doubt.*" *State v. Green*, 616 P.2d at 632 (emphasis in original).

tion listing the elements of the crime, and the general jury verdict form and stated:

> Count I of the Information, Jury Instruction No. 10, and the general verdict form all fail to particularize the underlying crime that supports the burglary conviction. It is impossible to tell whether the jury relied on the crime of felony accessory or the crime of larceny when it convicted Bush of burglary. Therefore, the burglary conviction will stand, only if evidence in the record proves that Bush entered Schantz's apartment with the intent to commit both a felony *and* the crime of larceny. *Price v. State,* 807 P.2d 909, 912 (Wyo.1991).

*Id.* at 967 (emphasis in original). With insufficient evidence to support the intent to commit a larceny, this court reversed Bush's burglary conviction. *Id.* at 968.

[¶ 13] Just as in *Bush,* due to the general verdict, this court is left to speculate on which ground the jury found Tanner guilty of burglary. Thus, Tanner's burglary conviction will stand only if evidence in the record establishes that he had the intent to commit both a felony *and* the crime of larceny. However, the instructions in this case create more serious problems than the single problem in *Bush.* This case compels reversal even more strongly than *Bush* due to the fifth element recited in Instruction Number 6, where the jury was instructed that the State must prove that Tanner: "[e]ntered *or* remained in a building *or* occupied structure *or* vehicle, *or* separately secured *or* occupied portion of a building." (Emphasis supplied.) Thus, as Tanner points out in his brief, it is also unclear whether the jury found that he *entered* the Sandbar without authority or whether he *remained in* the Sandbar without authority. Further, it is unclear which sort of structure was intended in the charge. Despite these additional problems, we will confine our discussion to the *Bush* issue, because that issue is dispositive.

[¶ 14] The State attempts to avoid application of the simple rule recited above by asserting that, unlike *Bush,* it is clear in the instant case that the State proceeded upon only one "theory of guilt." It contends

the prosecutor's opening and closing statements show there was only one State "theory" ever presented to the jury: that of the intent to commit larceny. Even assuming *arguendo* this were true, the State's reasoning is flawed because it inappropriately equates prosecutorial argument with the State's alternative theories of guilt as that term of art is used in cases on the subject such as *Fife v. State, Yates v. United States,* and *Bush v. State.* As is clear from studying those opinions, courts determine the State's theories from its charging documents, its requested jury instructions, etcetera-from official record evidence, not from argument by counsel. Indeed, this court has repeatedly held that prosecutorial argument is not evidence and consistently emphasized that jurors are so instructed, as was this jury. *See e.g., Christian v. State,* 883 P.2d 376, 381 (Wyo.1994); *Talbott v. State,* 902 P.2d 719, 722 (Wyo.1995). We decline to reverse that view. Instead of accepting the State's invitation to rely upon the prosecutor's oratory to determine precisely how the jury was charged with its task to find the defendant guilty or not guilty, we will continue to resolve this issue as we have consistently done in the past, i.e., by reviewing the information, the jury instructions, and the form of the jury's verdict.

[¶ 15] We also reject the State's contention that jury instructions 4 and 6 should be reviewed for plain error because Tanner did not object to those instructions. This court has not held that it is "error" to instruct the jury in the alternative. Rather, we have held that *if* a jury is instructed in the alternative, and *if* that jury returns a general verdict of guilty, then upon appellate review of the sufficiency of the evidence to support the conviction, the record must support *each* alternative beyond a reasonable doubt. Having reiterated how we analyze the sufficiency issue, we now turn to the evidence adduced at trial to resolve whether, when viewed in the light most favorable to the State, the record sufficiently supports beyond a reasonable doubt that Tanner had the intent to commit larceny *and* a felony therein.[5]

---

5. Appellant argues that Tanner did not "without authority" enter or remain within the Sandbar Lounge because it was a place of business open

during business hours. He relies upon cases from several jurisdictions which do not allow such an inference. As the South Dakota Su-

[¶ 16] Upon review of the transcripts, we find that the State called six witnesses to testify at trial and entered exhibits of photographs of the interior and exterior of the Sandbar Lounge into evidence. The State's first and lengthiest witness, Michelle Bouzis, testified generally to her knowledge of the Sandbar Lounge, the events that transpired which led her to confront Tanner within the Lounge, and his subsequent conduct, demeanor, and remarks made to her. Nothing in her testimony allows the reasonable inference that Tanner had the intent to commit "a felony therein." Likewise, neither does the testimony of bar manager Roger Hessler or Officer Tim Eulberg. Nor does the testimony of Tammy Sue, "Sam" Hatcher, one of the bar employees who closed early that evening, give rise to such an inference. Neither still does the testimony of Tanner's co-defendant, Kathleen Davis, support even the reasonable inference that Tanner possessed the intent to commit "a felony therein." Lastly, the brief testimony of Detective Karen Watson cannot support the alternative element charged. The State essentially concedes as much in its appellate brief when it states, "the State proceeded on a single theory, that Appellant committed burglary by remaining in a building without authority with intent to commit larceny, and presented sufficient evidence relating to that theory from which the jury could find Appellant guilty beyond a reasonable doubt. *No rational jury could have convicted Appellant on any other ground."* Accordingly, we conclude the record is insufficient to support Tanner's felony conviction for burglary with intent to commit a felony.

[¶ 17] We must now consider the appropriate disposition of the charge. In *Longstreth v. State*, 890 P.2d 551, 553 (Wyo. 1995), we wrote that "Longstreth correctly argues that jeopardy attached when his conviction for burglary was reversed due to the State's failure to prove the unlawful entry element of the crime charged. *Edwards v. State*, 815 P.2d 670, 672 (Okla.Crim.App. 1991) (quoting *Burks v. United States*, 437 U.S. 1, 18, 98 S.Ct. 2141, 2150, 57 L.Ed.2d 1 (1978)) (jeopardy attaches when a conviction is overturned due to insufficiency of the evidence)." The United States Supreme Court in *Burks* wrote:

> Since we hold today that the Double Jeopardy Clause precludes a second trial once the reviewing court has found the evidence legally insufficient, the only "just" remedy available for that court is the direction of a judgment of acquittal. To the extent that our prior decisions suggest that by moving for a new trial, a defendant waives his right to a judgment of acquittal on the basis of evidentiary insufficiency, those cases are overruled.

437 U.S. at 18, 98 S.Ct. at 2150–51. Based on this precedent, this court will direct the district court to enter a judgment of acquittal on the burglary charge against Tanner.

[¶ 18] The court cannot leave this case without some comments and some (we hope) helpful guidance. It is with a

---

preme Court said in *Matter of TJE*, 426 N.W.2d 23, 24 (S.D.1988): "To interpret the word "remains" in [the statute] to hold a person commits second degree burglary whenever he is present in an occupied structure with the intent to commit a crime therein would make every shoplifter a burglar. It would make the commission of any crime indoors, no matter how severe, subject to a felony burglary charge." (Citation omitted.) We agree this argument has some merit especially following examination of *Longstreth v. State*, 832 P.2d 560, 564 (Wyo.1992), where this court wrote:

> In order to review appellant's sufficiency of evidence claim, we first examine what the phrase 'without authority' means in Wyoming's burglary statute. No Wyoming cases have directly addressed this element of the burglary statute.

In discussing burglary statutes in their treatise on criminal law, LaFave and Scott note, [t]he most common statutory term is "unlawfully," but some jurisdictions use other language, such as "unauthorized," by "trespass," "without authority," "without consent," or "without privilege."

Though these statutory formulae are not in all respects identical, they generally require that the entry be unprivileged. A more precise way of describing this situation is by excluding *those entries of premises when they are open to the public* or by a person licensed or privileged to enter.

2 W. LaFave & A. Scott, Substantive Criminal Law § 8.13 at pp. 466–67 (1986) (emphasis added and footnotes omitted).

Nevertheless, we decline to address these contentions on their merits because our holding on other grounds is dispositive.

great deal of frustration that we reverse Tanner's conviction. Simply put, this error should almost never arise in Wyoming courts. Avoiding the problem begins with a more carefully drafted charging document. In this case, it is clear Tanner did not enter a vehicle. Yet, that portion of the burglary statute was included in the information (and later, the jury instruction). Just as importantly, carefully crafted instructions to the jury are required. This court's precedent and the Wyoming Criminal Pattern Jury Instructions advise practitioners on how to instruct in the alternative. In his article, *Burglary in Wyoming*, XXXII Land & Water L.Rev. 721, 780–82 (1997), referencing the pattern instructions, Professor Theodore E. Lauer explains:

> The appropriate terms within the brackets, which are charged in the information and supported by the evidence, should be included in the instruction. Other terms which are not charged, or are not supported by the evidence should not be included in the instruction
>
> . . .
>
> It is very important that only those alternative bracketed terms in the foregoing instruction which are supported by the evidence in the case be included in the instruction given to the jury. In too many instances, the elements instruction given to the jury simply restates the content of the information, setting forth, for example, that the defendant "entered or remained in a building, occupied structure or vehicle or separately secured or occupied portion thereof," and "with intent to commit larceny or a felony therein." Such instructions are inadequate, and should lead to reversal of convictions. The instruction must conform to the crime as charged in the information, and must also conform to the evidence which has been introduced.
>
> . . .
>
> Thus under *Fife*, an elements instruction in the general language of the burglary statute, stating "with intent to commit larceny or a felony therein" when there was no evidence to support a finding of intent to commit larceny, would be reversible error. Likewise, if the State is relying upon intent to commit some felony therein, that felony must be specifically stated. Thus if

intent to commit sexual assault is relied upon, the instruction must say so. It is not proper to give the jury a roaming commission to pick out which undefined and unspecified felony it might think the evidence supports.

### CONCLUSION

[¶ 19] Based on the foregoing, we reverse Tanner's conviction and vacate the Judgment and Sentence entered by the district court. We remand this matter to the district court for entry of a judgment of acquittal on the burglary charge against Tanner.