KAUTZ, Justice.
[¶ 1] Phillip Timothy Jordin was convicted by a jury of conspiracy to commit aggravated burglary, conspiracy to commit aggravated robbery, conspiracy to commit aggravated assault and battery, and conspiracy to commit theft. Mr. Jordin appeals three of his convictions, arguing the State failed to present sufficient evidence at trial. We affirm.
ISSUE
[¶ 2] Mr. Jordin raises one issue in this appeal:
There is insufficient evidence to support the convictions of conspiracy to commit aggravated burglary, aggravated robbery, and aggravated assault [and battery].
FACTS
[¶ 3] In the early hours of June 25, 2016, Mr. Jordin and his friend, Adam Reed, decided *529 to burglarize the Sinclair Golf Course. To carry out this plan, the two drove to the golf course in Mr. Jordin's car, arriving at approximately 3:15 a.m. Mr. Reed kicked in the back door of the clubhouse and began removing items from the pro shop. He entered the pro shop three times, grabbing any items he could including cash registers, golf clubs, alcohol, and potato chips. Mr. Jordin remained in his car, acting as a lookout.
[¶ 4] The golf course's manager, Brian Creager, who lived in a home on the golf course, saw the taillights of Mr. Jordin's vehicle entering the property. Mr. Creager drove to the clubhouse and encountered Mr. Jordin and Mr. Reed looking under the raised hood of Mr. Jordin's car. Mr. Creager rolled down his window and asked the men if there was a problem. The men said they were having car troubles and were checking the antifreeze and oil. Mr. Creager then went to the clubhouse, entering through the pro shop. After a few minutes, Mr. Creager left the clubhouse, locked the door, and went to the office building. He observed Mr. Jordin and Mr. Reed still working on the car. Mr. Creager was in the office for a short time and then returned to the pro shop. While in the pro shop the second time, Mr. Creager noticed the cash register and his computer were missing. He went into the kitchen and observed the cooler door was open, the door frame into the building was broken, and the door was open.
[¶ 5] Mr. Creager then confronted Mr. Jordin and Mr. Reed at their car, telling them he needed to look inside the vehicle. At this point, Mr. Reed shined a military grade flashlight in strobe mode into Mr. Creager's face. Mr. Creager saw Mr. Jordin quickly moving towards him. He grabbed the flashlight from Mr. Reed and struck Mr. Jordin in the head with it. Mr. Jordin staggered away from Mr. Creager as his head was bleeding and his glasses fell from his face. Mr. Creager saw Mr. Reed reach through an open window into the car and attempt to start it using a screwdriver. Mr. Creager looked away for a moment to find something to use to disable the vehicle, and when he looked back he could no longer see Mr. Reed. Mr. Creager then heard someone say, "He split my head open," followed by, "Shoot him, shoot him." Seconds later, someone fired a gun and Mr. Creager observed a muzzle flash.
[¶ 6] Mr. Creager ran into the clubhouse and called 911. During the call, he noticed the men leaving in their car, and he decided to pursue them. He chased the men and forced them off the road, resulting in both Mr. Jordin's and Mr. Creager's vehicles rolling over. Mr. Creager got out of his vehicle and saw Mr. Reed begin to run away. He yelled at Mr. Reed to stop or he would kill him and Mr. Reed responded, "You already killed my friend," and continued to run away. Not seeing or hearing Mr. Jordin, Mr. Creager began to walk back towards the golf course until he was met by a law enforcement officer. Mr. Jordin was arrested two days later.
[¶ 7] The State charged Mr. Jordin with conspiracy to commit aggravated burglary, in violation of Wyo. Stat. Ann. §§ 6-1-303(a) (LexisNexis 2017) and 6-3-301(a) and (c)(i) (LexisNexis 2017); conspiracy to commit aggravated assault and battery, in violation of Wyo. Stat. Ann. §§ 6-1-303(a) and 6-2-502(a)(ii) or (iii) (LexisNexis 2017); conspiracy to commit theft, in violation of Wyo. Stat. Ann. §§ 6-1-303(a) and 6-3-402(a) and (c)(i) (LexisNexis 2017); conspiracy to commit wrongful taking or disposing of property, in violation of Wyo. Stat. Ann. §§ 6-1-303(a) and 6-3-403(a)(i) (LexisNexis 2017); and conspiracy to commit aggravated robbery, in violation of Wyo. Stat. Ann. §§ 6-1-303(a) and 6-2-401(a)(ii), (c)(ii), and (d) (LexisNexis 2017).[1] The case proceeded to trial, and at *530 the close of the evidence, the State dismissed the charge of conspiracy to commit wrongful taking and disposing of property. The jury found Mr. Jordin guilty of the remaining four charges. Mr. Jordin filed a timely notice of appeal.
STANDARD OF REVIEW
[¶ 8] When reviewing a claim regarding the sufficiency of the evidence, we use the following well-established standard of review:
[T]his Court examines the evidence in the light most favorable to the State. We accept all evidence favorable to the State as true and give the State's evidence every favorable inference which can reasonably and fairly be drawn from it. We also disregard any evidence favorable to the appellant that conflicts with the State's evidence.
Thompson v. State , 2018 WY 3, ¶ 14, 408 P.3d 756, 761 (Wyo. 2018) (quoting Harnden v. State , 2016 WY 92, ¶ 5, 378 P.3d 611, 612-13 (Wyo. 2016) ). When considering the evidence,
[w]e do not consider "whether or not the evidence was sufficient to establish guilt beyond a reasonable doubt, but [instead] whether or not the evidence could reasonably support such a finding by the factfinder." Hill v. State , 2016 WY 27, ¶ 13, 371 P.3d 553, 558 (Wyo. 2016). "We will not reweigh the evidence nor will we re-examine the credibility of the witnesses." Hill , 2016 WY 27, ¶ 12, 371 P.3d at 558. We review the sufficiency of the evidence "from this perspective because we defer to the jury as the fact-finder and assume they believed only the evidence adverse to the defendant since they found the defendant guilty beyond a reasonable doubt." Oldman [v. State ], 2015 WY 121, ¶ 5, 359 P.3d [964,] 966 [ (Wyo. 2015) ].
Thompson , ¶ 14, 408 P.3d at 760 (quoting Mraz v. State , 2016 WY 85, ¶ 19, 378 P.3d 280, 286 (Wyo. 2016) ).
DISCUSSION
[¶ 9] Mr. Jordin's convictions for conspiracy to commit aggravated burglary, conspiracy to commit aggravated robbery, and conspiracy to commit aggravated assault and battery all required the State to prove that Mr. Jordin and Mr. Reed agreed to use a deadly weapon during the commission of their crimes. Mr. Jordin argues the State failed to carry its burden of proof of this element. A close look at his argument, however, demonstrates that his challenge to the sufficiency of the State's evidence at trial is two-fold. His primary focus is on the fact that the State presented three different theories about what was used as a deadly weapon during the confrontation-the army grade flashlight, the gun, and a baseball bat that was found in the area where Mr. Jordin parked his vehicle at the golf course. Mr. Jordin argues that because the State did not choose which of the "deadly weapons" it was relying on for each of the charges, our precedent *531 in Tanner v. State , 2002 WY 170, 57 P.3d 1242 (Wyo. 2002), requires the State prove beyond a reasonable doubt that Mr. Jordin and Mr. Reed conspired to use all three weapons during the burglary and confrontation with Mr. Creager. This leads to the second part of Mr. Jordin's argument, which is the State failed to prove Mr. Jordin and Mr. Reed agreed to use any weapon at all. We will consider each of these issues in turn.
Applicability of Tanner v. State
[¶ 10] At trial, the State argued that the flashlight, the gun, or the baseball bat would satisfy the "deadly weapon" element found in each of the charged crimes. Mr. Jordin argues that, because the State did not choose only one of those theories at trial, the State must point to facts in the record that show beyond a reasonable doubt Mr. Jordin conspired with Mr. Reed to use each of the weapons. In support of this argument, Mr. Jordin relies on our decision in Tanner .
[¶ 11] In Tanner , this Court reaffirmed the requirement that, if a crime contains alternative elements and the jury is instructed regarding both alternatives because the State does not elect a single alternative as the basis for the charge, this Court must find sufficient evidence of each alternative element to uphold the conviction on appeal. Id ., ¶ 13, 57 P.3d at 1246 ; see also Bush v. State , 908 P.2d 963, 967 (Wyo. 1995) ; Fife v. State , 676 P.2d 565, 568 (Wyo. 1984). In Tanner and Bush , the defendants were charged with burglary, and in both instances the jury was informed that the burglary statute required the State to prove the defendant entered the dwelling with the intent to commit a felony or the crime of larceny. Tanner , ¶ 9, 57 P.3d at 1245 ; Bush , 908 P.2d at 966. Because the Court was left to speculate on which of the alternative elements the jury unanimously relied upon, the State had to prove sufficient evidence of both. This rule applies even in situations where the evidence presented and the State's arguments regarding the theory of the crime support only one of the alternative elements. Tanner , ¶ 14, 57 P.3d at 1247.
[¶ 12] Since Tanner , this Court has made it clear this rule is limited to situations where the jury is presented with alternative elements . In Miller v. State , 2006 WY 17, 127 P.3d 793 (Wyo. 2006), we explained the rule did not apply when the jury was instructed that the element of "delivery" could be completed by an "actual, constructive, or attempted transfer from one person to another of a controlled substance." Id ., ¶ 23, 127 P.3d at 799. Regardless of which type of delivery occurred, the element of the crime-"delivery"-never changed, and thus the jury was not presented with alternative elements upon which the conviction could be based. Id .See also, Doherty v. State , 2006 WY 39, ¶ 16, 131 P.3d 963, 969 (Wyo. 2006) ; Brown v. State , 2014 WY 104, ¶ 12, 332 P.3d 1168, 1173 (Wyo. 2014) ("The instruction addressing 'serious bodily injury' only served to define one of the terms included in the elements, nothing more. As a result, Tanner is inapplicable to the instructions given in this case.").
[¶ 13] We have further held the rule does not apply when the State presents multiple theories or facts that could satisfy an element of a crime. In Daves v. State , 2011 WY 47, 249 P.3d 250 (Wyo. 2011), the appellant was charged with one count of first-degree sexual assault, which required the State to prove the defendant "causes submission of the victim by threat of death, serious bodily injury, extreme physical pain ... on anyone[.]" Id ., ¶ 29, 249 P.3d at 258. The State presented evidence the appellant threatened the victim, her boyfriend, and himself. Id . The appellant argued the Tanner rule applied because one could not discern from the verdict who the jury believed the appellant threatened. We disagreed and explained the statute does not require that the State prove the threats were directed at a specific person; therefore, the conviction could be sustained so long as there was evidence the appellant threatened anyone. Id ., ¶¶ 33-36, 249 P.3d at 259-60. See also, Worley v. State , 2017 WY 3, ¶ 19, 386 P.3d 765, 771 (Wyo. 2017) (quoting Richardson v. United States , 526 U.S. 813, 817, 119 S.Ct. 1707, 143 L.Ed.2d 985 (1999) ("Where for example, an element of robbery is force or the threat of force, some jurors might conclude that the defendant used a knife to create the threat; others might conclude he used a gun. But *532 that disagreement-a disagreement about means-would not matter as long as all 12 jurors unanimously concluded that the Government had proved the necessary related element, namely, that the defendant had threatened force.") ).
[¶ 14] Mr. Jordin does not acknowledge any of this Court's precedent discussed above, and instead relies on one paragraph in Woyak v. State , 2010 WY 27, 226 P.3d 841 (Wyo. 2010) to support his argument that the Tanner rule applies here. In Woyak , we reversed the appellant's conviction and remanded to the district court because the appellant was denied his right to be present at a competency hearing. Id ., ¶ 27, 226 P.3d at 854. In addition to the competency hearing issue, the appellant had also complained the verdict form failed to specify the facts the State was relying on for the two separate counts of sexual exploitation of children. Id ., ¶ 26, 226 P.3d at 854. This Court did not address the latter claim, but did caution that the instruction explaining the various ways in which one can engage in "explicit sexual conduct" is "no mere 'definitional instruction[,]' " and may make it impossible to tell which acts the jurors relied upon in finding the two separate violations of the statute. Id .
[¶ 15] Mr. Jordin's reliance on Woyak is unpersuasive. The Court did not consider the merits of the claim, and its cautionary language is dicta and should not be relied on as substantive authority. In re Claim of Prasad , 11 P.3d 344, 348 (Wyo. 2000) (citing Bales v. Brome , 53 Wyo. 370, 380, 84 P.2d 714, 717 (Wyo. 1938) ) ("The authority of a former decision as a precedent must be limited to the points actually decided on the facts before the court."). Additionally, in Woyak , the State had charged the appellant with two separate counts of the same statute, so further description of the appellant's alleged criminal conduct may have been necessary to distinguish between the two counts. Mr. Jordin was charged with multiple crimes, but each charge was based on a different statute.
[¶ 16] Mr. Jordin's situation is squarely addressed by Daves and Worley , and the rule from Tanner simply does not apply. The jury was not required to deliberate regarding alternative elements. Instead, the jury simply had to determine if Mr. Jordin and Mr. Reed agreed to use a deadly weapon during the commission of each crime. While the State suggested there were several facts that could meet the "deadly weapon" element of the charged crimes, the "deadly weapon" element remained the same regardless of the type of deadly weapon used. Therefore, so long as there was evidence Mr. Jordin and Mr. Reed agreed to use a deadly weapon during the commission of the crimes, we must affirm Mr. Jordin's convictions.
Sufficiency of the Evidence
[¶ 17] Mr. Jordin argues the State presented insufficient evidence to demonstrate that Mr. Jordin and Mr. Reed agreed to use the flashlight, the gun, or the baseball bat during the incident at the golf course. As discussed above, we need not determine whether the State presented proof beyond a reasonable doubt that they agreed to use each of the deadly weapons. We conclude the State presented sufficient evidence demonstrating they agreed to use the gun and, therefore, we will not consider the evidence regarding the flashlight or the baseball bat.
[¶ 18] Mr. Jordin's assertion that the State presented insufficient evidence he and Mr. Reed agreed to use the gun is based solely on the facts that Mr. Reed testified he was not aware Mr. Jordin had a weapon, Mr. Reed denied saying "Shoot him, shoot him," and Mr. Creager testified he did not know which man yelled "Shoot him, shoot him." This argument, however, ignores our standard of review when considering the sufficiency of the evidence. We review the evidence in the light most favorable to the State, including every favorable inference that can be drawn from that evidence, and ignore any evidence favorable to Mr. Jordin that conflicts with the State's evidence. Thompson , ¶ 14, 408 P.3d at 761. Therefore, we disregard Mr. Reed's testimony that he did not know Mr. Jordin had a gun and that he did not say "Shoot him, shoot him."
[¶ 19] It is important to recognize that, while a conspiracy is "commonly ... defined as an agreement between two or more people to commit an unlawful act[,]" the *533 formal requirements of the agreement itself are not stringent. Ekholm v. State , 2004 WY 159, ¶ 22, 102 P.3d 201, 207 (Wyo. 2004) (quoting Wehr v. State , 841 P.2d 104, 109 (Wyo. 1992) ). "A 'meeting of the minds' concept is unnecessary; '[a] mere tacit understanding will suffice, and there need not be any written statement or even a speaking of words which expressly communicates agreement.' " Ekholm , ¶ 22, 102 P.3d at 207 (quoting Burk v. State , 848 P.2d 225, 235 (Wyo. 1993) ). Additionally, we have recognized that "[b]ecause most conspiracies are clandestine in nature, the prosecution is seldom able to present direct evidence of the agreement." Ekholm , ¶ 22, 102 P.3d at 207-08. Therefore, it is "well established that the prosecution may 'rely on inferences drawn from the course of conduct of the alleged conspirators.' " Id . (quoting Martinez v. State , 943 P.2d 1178, 1183 (Wyo. 1997) ).
[¶ 20] Mr. Jordin is correct that the State did not present any direct evidence demonstrating Mr. Jordin and Mr. Reed discussed a specific plan to use the gun while burglarizing the clubhouse. However, there is ample evidence in the record that would allow the jury to nonetheless conclude that through their conduct the two men had a tacit agreement and understanding the gun may be used. Mr. Creager testified that after he hit Mr. Jordin in the head with the flashlight, Mr. Jordin turned and ran away. He testified he then heard two phrases: "He split my head open." "Shoot him, shoot him." Seconds later, Mr. Creager heard a gunshot and saw a muzzle flash. He explained he did not know who said, "Shoot him, shoot him." However, because he knew he had struck Mr. Jordin in the head with the flashlight, he deduced Mr. Jordin was the one who exclaimed, "He split my head open." Mr. Creager testified he perceived these comments as a communication between Mr. Jordin and Mr. Reed to shoot Mr. Creager. Mr. Jordin testified he retrieved his gun from his vehicle after Mr. Creager struck him, and he did, in fact, fire the gun.
[¶ 21] Based upon this evidence, the jury could reasonably infer that, after Mr. Jordin said, "He split my head open," Mr. Reed told Mr. Jordin to shoot at Mr. Creager ("Shoot him, shoot him."). It is also reasonable for the jury to infer Mr. Reed would have said this only if he knew Mr. Jordin had a gun in his possession. Further, a witness named Samantha Sanchez, who is friends with Mr. Jordin, testified that Mr. Jordin always carried his gun with him and that fact was well known within his circle of friends. Therefore, the jury could reasonably conclude that Mr. Jordin and Mr. Reed engaged in their criminal conduct with a tacit agreement that Mr. Jordin would be armed and one of them could use the gun if necessary.
CONCLUSION
[¶ 22] The State's argument that either the flashlight, the gun, or the baseball bat could meet the element of "deadly weapon" found in each of the crimes did not amount to the jury being presented with alternative elements and, therefore, the Tanner rule does not apply. Further, the record demonstrates the State presented sufficient evidence for the jury to conclude Mr. Jordin and Mr. Reed agreed to use the gun during the burglary and subsequent events at the golf course.
[¶ 23] Affirmed.

The statutes regarding the crimes being appealed are as follows:
§ 6-1-303. Conspiracy; renunciation of criminal intention; venue.
(a) A person is guilty of conspiracy to commit a crime if he agrees with one (1) or more persons that they or one (1) or more of them will commit a crime and one (1) or more of them does an overt act to effect the objective of the agreement.
§ 6-2-401. Robbery; aggravated robbery; penalties.
(a) A person is guilty of robbery if in the course of committing a crime defined by W.S. 6-3-402, 6-3-412 or 6-3-413 he:
(i) Inflicts bodily injury upon another; or
(ii) Threatens another with or intentionally puts him in fear of immediate bodily injury.
....
(c) Aggravated robbery is a felony punishable by imprisonment for not less than five (5) years nor more than twenty-five (25) years if in the course of committing the crime of robbery the person:
....
(ii) Uses or exhibits a deadly weapon or a simulated deadly weapon.
§ 6-2-502. Aggravated assault and battery; penalty.
(a) A person is guilty of aggravated assault and battery if he:
....
(ii) Attempts to cause, or intentionally or knowingly causes bodily injury to another with a deadly weapon;
(iii) Threatens to use a drawn deadly weapon on another unless reasonably necessary in defense of his person, property or abode or to prevent serious bodily injury to another....
§ 6-3-301. Burglary; aggravated burglary; penalties.
(a) A person is guilty of burglary if, without authority, he enters or remains in a building, occupied structure or vehicle, or separately secured or occupied portion thereof, with intent to commit theft or a felony therein.
....
(c) Aggravated burglary is a felony punishable by imprisonment for not less than five (5) years nor more than twenty-five (25) years, a fine of not more than fifty thousand dollars ($50,000.00), or both, if, in the course of committing the crime of burglary, the person:
(i) Is or becomes armed with or uses a deadly weapon or a simulated deadly weapon.