# IN THE SUPREME COURT, STATE OF WYOMING

## 2023 WY 93

APRIL TERM, A.D. 2023

September 28, 2023

DANIEL EUGENE MARTENS, JR.,

Appellant
(Defendant),

v.

S-23-0040

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Laramie County*
The Honorable Peter H. Froelicher, Judge

*Representing Appellant:*
> Office of the State Public Defender: Diane Lozano, State Public Defender; Kirk A. Morgan, Chief Appellate Counsel; Robin S. Cooper, Senior Assistant Appellate Counsel.

*Representing Appellee:*
> Bridget Hill, Wyoming Attorney General; Jenny L. Craig, Deputy Attorney General; Kristen R. Jones, Senior Assistant Attorney General; Samuel Williams, Senior Assistant Attorney General.

*Before FOX, C.J., and KAUTZ, BOOMGAARDEN, GRAY, and FENN, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**KAUTZ, Justice.**

[¶1]    A jury found registered sex offender, Daniel Eugene Martens, Jr., guilty of failing to notify law enforcement of a change in his residential address.  Mr. Martens claims the State did not present sufficient evidence at trial to support his conviction.  We affirm.

## ISSUE

[¶2]    Mr. Martens does not provide a specific statement of the issue on appeal as required by Wyoming Rule of Appellate Procedure 7.01(e).  However, we can discern from his brief that he challenges the sufficiency of the evidence to sustain his conviction for failing to notify law enforcement of a change in his residential address.

## FACTS

[¶3]    Mr. Martens moved to Cheyenne in May 2019 after being paroled from prison in Colorado.  Because of his criminal history, he was required by the Wyoming Sex Offender Registration Act, Wyo. Stat. Ann. §§ 7-19-301 through 7-19-310 (LexisNexis 2023), to register as a sex offender with the Laramie County Sheriff's Department (LCSD), which included providing information about his residential address.  *See* § 7-19-302(a) ("Any offender residing in this state or entering this state for the purpose of residing . . . in this state shall register with the sheriff of the county in which he resides . . . and shall provide the following additional information when registering: . . . (ii) [a]ddress[.]").  He was also required to personally report any change in his residential address to the LCSD "within three (3) working days of establishing the new residence."  Section 7-19-302(e).  When Mr. Martens initially registered with the LCSD, he said he lived in a home on Kennedy Drive with his mother, June Ioerger, and her boyfriend, Carl Burnside.  Mr. Burnside owned the home and charged Mr. Martens $500 per month in rent.

[¶4]    According to Ms. Ioerger, Mr. Martens moved in with his girlfriend, Amy Taggert,[1] in September 2019, and only returned to the Kennedy Drive house for holidays and to pay rent and meet with his parole officer.  Mr. Martens did, however, continue to keep personal items and an RV at the Kennedy Drive address, and Mr. Burnside reduced the rent to $200 per month for storage.  Mr. Martens did not inform the LCSD he was staying with Ms. Taggert, and he verified the Kennedy Drive address as his residence at his annual meeting with the LCSD in July 2020.

[¶5]    On June 7, 2021, the LCSD sex offender registration supervisor, Kimberly Wright, became aware Mr. Martens was not living at the Kennedy Drive address and reported a potential violation of the sex offender registration requirements to LCSD Sergeant Robert

---

[1] By the time of the trial, Mr. Martens and Ms. Taggert were married and she went by Amy Martens.  For sake of simplicity, we will refer to her as Ms. Taggert.

Mosbacher. On June 10, 2021, Mr. Martens appeared at the LCSD to update his address in the registry. He reported he had rented a room at the Rodeo Inn in Cheyenne on June 1, 2021. Mr. Martens initially told Sergeant Mosbacher he had not yet stayed at the Rodeo Inn but eventually admitted he had been staying there since June 1.

[¶6]    The State charged Mr. Martens with two violations of the Sex Offender Registration Act. Count I alleged Mr. Martens violated § 7-19-302(e) by failing to notify the LCSD of his change of residential address. Count II alleged he violated § 7-19-302(n) by failing to register one of his phone numbers with the LCSD. After a trial, the jury found him guilty on both counts. The district court entered a judgment and sentence, and Mr. Martens filed a timely notice of appeal, challenging only his conviction on Count I.

## DISCUSSION

[¶7]    Mr. Martens challenges the sufficiency of the evidence to convict him of failing to notify the LCSD of a change in his residential address in accordance with § 7-19-302(e). The relevant portion of § 7-19-302(e) states: "If any person required to register under this act changes his residence address within the same county, he shall provide notice of the change of address in person to the sheriff of the county in which he resides within three (3) working days of establishing the new residence."

[¶8]    In Instruction No. 15, the district court instructed the jury the elements of Count I were:

1. On or about the period of September 30, 2019 to June 09, 2021
2. In Laramie County, Wyoming
3. The Defendant, Daniel Eugene Martens[,] Jr.
4. As a sex offender required to register
5. Knowingly failed to report a change of address.

Other instructions informed the jury of the statutory definitions of "residence," "reside," and "report"; the parties had stipulated to the fourth element, i.e., Mr. Martens was "a sex offender required to register" with LCSD; and "it is the law that if any person required to register as a sex offender changes [his] residence address[,] [he] shall provide notice of that change of address in person to the [s]heriff within three working days of establishing a new address."

[¶9]    The district court also granted Mr. Martens' request for an "unanimity" instruction, which stated:

2

> The Defendant is charged with FAILURE TO REGISTER AS A SEX OFFENDER in Count 1 of the Information.
>
> The State has presented evidence of more than one act to prove that the Defendant committed this offense. You must not find the Defendant guilty unless you all unanimously agree that the State has proved that the Defendant committed at least one or both of these acts and you all agree on which act or acts he committed.

Although there was some discussion between the parties and the district court about a special verdict form which would have required the jury to designate which act or acts Mr. Martens committed in violation of § 7-19-302(e), the court elected to use a general verdict form which simply instructed the jury to decide whether Mr. Martens was "guilty" or "not guilty" of Count I.

[¶10]   Although Instruction No. 15 did not precisely follow the language of § 7-19-302(e), Mr. Martens does not claim the jury instructions or verdict form were erroneous. Rather, he asserts that because the State presented evidence he failed to register two residential addresses (Ms. Taggert's home and the Rodeo Inn) and the verdict form did not specifically direct the jury to indicate which of the addresses it unanimously decided he failed to register, there must be sufficient evidence showing he was guilty of failing to register both addresses. According to him, the State did not present sufficient evidence to prove he failed to register Ms. Taggert's address.

[¶11]   In support of his argument, Mr. Martens cites *Tanner v. State,* 2002 WY 170, 57 P.3d 1242 (Wyo. 2002). Mr. Tanner was charged with burglary under Wyo. Stat. Ann. § 6-3-301(a) (LexisNexis 2000), which stated "'[a] person is guilty of burglary if, without authority, he enters or remains in a building . . . with intent to commit larceny or a felony there.'" *Id.,* ¶¶ 7, 9 n.3, 57 P.3d at 1244-45 n.3 (quoting the 2000 version of § 6-3-301(a)). Intent to commit larceny and intent to commit a felony were alternative elements of burglary. *Id.,* ¶¶ 9-13, 57 P.3d at 1244-45. The district court instructed the jury the State was required to prove Mr. Tanner entered the building with the "intent to commit larceny or a felony therein," but it did not direct the jury to indicate on the verdict form which element it unanimously found him guilty of violating. *Id.* Because it was impossible for us to determine which alternative element the jury unanimously agreed upon, we required the State to show it had presented sufficient evidence at trial to prove both elements beyond a reasonable doubt. *Id.,* ¶¶ 13-14, 57 P.3d at 1246.

[¶12]   Since then, we have "made it clear [the *Tanner*] rule is limited to situations where the jury is presented with alternative [statutory] elements." *Jordin v. State,* 2018 WY 64, ¶ 12, 419 P.3d 527, 531 (Wyo. 2018) (emphasis omitted). The rule does not apply to different means of committing the same element. *Id.* For example, Mr. Jordin was

3

convicted of conspiracy to commit aggravated burglary, conspiracy to commit aggravated robbery, and conspiracy to commit aggravated assault and battery, each of which required the State to prove Mr. Jordin and his accomplice "agreed to use a deadly weapon during the commission of their crimes." *Id.,* ¶ 9, 419 P.3d at 530. The State "presented three different theories about what was used as a deadly weapon during the confrontation—[an] army grade flashlight, [a] gun, and a baseball bat that was found in the area where Mr. Jordin parked his vehicle[.]" *Id.* Based on *Tanner*, Mr. Jordin argued that "because the State did not choose which of the 'deadly weapons' it was relying on for each of the charges, . . . the State [was required to] prove beyond a reasonable doubt that Mr. Jordin and [his accomplice] conspired to use all three weapons[.]" *Id.,* ¶ 9, 419 P.3d at 530-31. We rejected his argument because the jury was not required to choose between alternative statutory elements; it simply had to determine if the State had proven the single element of whether he and his accomplice had conspired to use at least one of the deadly weapons identified by the State's evidence. *Id.,* ¶ 16, 419 P.3d at 532. We found sufficient evidence they had conspired to use the gun in committing the crimes. *Id.*, ¶ 17, 419 P.3d at 532.

[¶13] In *Miller v. State*, 2006 WY 17, ¶ 23, 127 P.3d 793, 799 (Wyo. 2006), Mr. Miller was charged with delivery of a controlled substance, and the jury was instructed the State could prove Mr. Miller "delivered" the controlled substance through the "actual, constructive, or attempted transfer from one person to another[.]" *See also,* Wyo. Stat. Ann. § 35-7-1002(a)(vi) (LexisNexis 2023) ("'[d]eliver' or 'delivery' means the actual, constructive, or attempted transfer from one person to another of a controlled substance"). We explained the rule set out in *Tanner* and similar cases did not apply because

> the elements instruction given to the jury on the charged offense did not contain alternative elements upon which [Mr.] Miller's convictions could be based. [Mr.] Miller's jury was only required to determine if the evidence proved [he] delivered a controlled substance[.] . . . [The instruction] merely defined the term "deliver" and did not have the effect of charging an alternative ground for conviction.

*Id.,* ¶¶ 25-26, 127 P.3d at 799-800 (citing *Tanner, supra,* and *Bush v. State,* 908 P.2d 963, 966-67 (Wyo. 1995)) (other citations omitted). Even though the district court used a general verdict form and did not require the jury to indicate which type of delivery Mr. Miller committed, the State was only required to show sufficient evidence of one type of delivery. *Id.,* ¶¶ 24-27, 127 P.3d at 799-800.

[¶14] The charge against Mr. Martens for failing to update his residential address under § 7-19-302(e) did not include alternative statutory elements. "Knowingly fail[ing] to report a change of address" was a single element of the crime. As the jury was instructed, an offender "fails to report a change of address" when he does not "provide notice of [a] change of address in person to the [s]heriff within three (3) working days of establishing a

4

new residence." The district court also instructed the jury a "residence" is a "dwelling place with an established physical address or identifiable physical location intended for human habitation," while "'[r]eside' and words of similar import mean the physical address of each residence of an offender, including: . . . (B) [a]ny physical address where the offender habitually visits; and (C) [t]emporary residences such as hotels, motels, public or private housing, camping areas, parks, public buildings, streets, roads, highways, restaurants, libraries or other places the offender may frequent and use for shelter or other activities of daily living." Section 7-19-301(a)(xi)(B), (C), (xix).

[¶15] Under the plain and ordinary meaning of the language in § 7-19-302(e), an offender violates the Sex Offender Registration Act when he fails to register the address of each place he resides within three days of establishing the residence. *See generally, Mathewson v. State,* 2018 WY 81, ¶ 9, 431 P.3d 1121, 1123 (Wyo. 2018) ("'The plain, ordinary, and usual meaning of words used in a statute controls in the absence of clear statutory provisions to the contrary.'" (quoting *Adekale v. State*, 2015 WY 30, ¶ 12, 344 P.3d 761, 765 (Wyo. 2015))). A person resides not only at the place where he keeps his belongings and claims to live, but also at places he habitually visits or temporarily stays. Section 7-19-301(a)(xi)(B), (C). The State's evidence of Mr. Martens' failure to register two residences (Ms. Taggert's home and the Rodeo Inn) is akin to the State's evidence of three "deadly weapons" in *Jordin*; it is multiple means of committing a single element – failing to report a change of address. Likewise, the multiple statutory definitions of "reside" do not create alternative statutory elements. Instead, the district court's instruction on the different definitions of "reside" from § 7-19-301(a)(xi) was consistent with *Miller* where we concluded *Tanner* did not apply to the multiple statutory definitions of "deliver" or "delivery." We will, therefore, determine whether the State presented sufficient evidence at trial showing Mr. Martens failed during the period of September 30, 2019, through June 9, 2021, to update his registered address within three days after he began "residing" at an address other than his registered address.[2]

[¶16] When reviewing a claim that the evidence was insufficient to support a jury's verdict,

> [w]e do not consider whether or not the evidence was sufficient
> to establish guilt beyond a reasonable doubt, but [instead]
> whether or not the evidence could reasonably support such a
> finding by the factfinder. We will not reweigh the evidence nor
> will we re-examine the credibility of the witnesses. We review
> the sufficiency of the evidence from this perspective because
> we defer to the jury as the fact-finder and assume they believed

---

[2] We note that by giving the unanimity instruction, the district court eliminated any concern the jury would not make a unanimous finding as to which address Mr. Martens failed to register.

only the evidence adverse to the defendant since they found the defendant guilty beyond a reasonable doubt.

*Thompson v. State,* 2018 WY 3, ¶ 14, 408 P.3d 756, 760 (Wyo. 2018) (quoting *Mraz v. State,* 2016 WY 85, ¶ 19, 378 P.3d 280, 286 (Wyo. 2016)) (quotation marks and other citations omitted).

> [T]his Court examines the evidence in the light most favorable to the State. We accept all evidence favorable to the State as true and give the State's evidence every favorable inference which can reasonably and fairly be drawn from it. We also disregard any evidence favorable to the appellant that conflicts with the State's evidence.

*Id.* (quoting *Worley v. State,* 2017 WY 3, ¶ 17, 386 P.3d 765, 771 (Wyo. 2017)) (other citations omitted).

[¶17]   The trial evidence was clearly sufficient to support the jury's conviction of Mr. Martens for failing to notify LCSD of a change of his residential address between September 30, 2019, and June 9, 2021.  Ms. Wright and Sergeant Mosbacher testified Mr. Martens listed the Kennedy Drive address when he moved to Cheyenne in May 2019, and he did not change the address until June 10, 2021.  Ms. Wright also stated, consistent with § 7-19-302(e), he had "three business days" after establishing a new residence to personally appear at the LCSD to update the information in the registry.  Ms. Ioerger testified that in September 2019, Mr. Martens began staying with Ms. Taggert and only returned to the Kennedy Drive address for holidays and to pay rent or meet with his parole officer.  Mr. Burnside said Mr. Martens stopped staying at the Kennedy Drive address in August 2019, and he reduced Mr. Martens' monthly rent to $200 per month for storing his RV and personal belongings.  Ms. Taggert confirmed Mr. Martens "regularly" stayed at her house "two [or] three nights" at a time.

[¶18]   This evidence shows Mr. Martens "resided" at Ms. Taggert's home by "habitually visit[ing]" her beginning in September 2019.  *See* § 7-19-301(a)(xi)(B) (an offender "resides" at "[a]ny physical address where [he] habitually visits").  Mr. Martens seems to believe that, as long as he did not stay with Ms. Taggert more than two consecutive nights, he was not required to report her address to the LCSD.  His claim does not comport with the evidence or the statutory language.  Ms. Taggert's testimony contradicted Mr. Martens' argument because she stated he "regularly" stayed with her up to three nights at a time.  Furthermore, the statutes do not require the offender to stay at an address more than two consecutive nights to be considered habitually visiting/residing at that address.  *See* §§ 7-19-301(a)(xi)(B), 7-19-302(e).  Instead, the offender is required to notify the sheriff of the change of address within three working days after he "establish[es] [a] new residence" by "habitually visit[ing]" a place.  *Id.*  The jury could reasonably find that, during the charged

6

period, Mr. Martens habitually visited Ms. Taggert's home and he did not report the change of residential address to the LCSD within three days of beginning that practice. This evidence, alone, was sufficient for the jury to find Mr. Martens guilty of Count I.

[¶19] However, as Mr. Martens appears to concede, the State also presented sufficient evidence by which a jury could reasonably find he failed to update his address within three working days of when he began residing at the Rodeo Inn. Sergeant Mosbacher testified that Mr. Martens appeared at the LCSD on June 10, 2021, to register the Rodeo Inn as his residence. He was required to register his temporary residence at the Rodeo Inn because it was a "motel" he "frequent[ed]" and "use[d] for shelter." Section 7-19-301(a)(xi)(C) ("'reside' and words of similar import" include "[t]emporary residences such as . . . motels . . . the offender may frequent and use for shelter or other activities of daily living"). He told Sergeant Mosbacher he had rented a room at the Rodeo Inn on June 1, 2021, which was corroborated by the motel records admitted into evidence at trial. Although Mr. Martens initially told Sergeant Mosbacher he "hadn't actually physically stayed" at the motel before appearing at the LCSD to change his address, Mr. Martens later admitted he started staying there on June 1. He did not register the Rodeo Inn address with the LCSD until June 10, 2021, which was well past the three-day deadline. *See* § 7-19-302(e).

## CONCLUSION

[¶20] Mr. Martens was not charged in Count I with alternative statutory elements for violating § 7-19-302(e). As a result, the *Tanner* rule did not apply and the State was only required to prove Mr. Martens failed to register Ms. Taggert's or the Rodeo Inn's address to sustain the jury's general guilty verdict on that count. In any event, the evidence was clearly sufficient to show he was required and failed to register both residential addresses.

[¶21] Affirmed.